[No. A106873. First Dist., Div. Three. Feb. 16, 2007.]

JUANA RAQUEL GUILLEN et al., Plaintiffs and Respondents, v.
ARNOLD SCHWARZENEGGER, as Governor, etc., et al., Defendants and
Appellants.

930

COUNSEL

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Teresa L. Stinson, Douglas M. Press and Karin S. Schwartz, Deputy Attorneys General, for Defendants and Appellants.

Clare Pastore; Lawyers' Committee for Civil Rights of the San Francisco Bay Area, Oren M. Sellstrom; Western Center on Law and Poverty, Nu Usaha, Richard A. Rothschild and Robert Newman for Plaintiffs and Respondents.

OPINION

McGUINESS, P. J.—This case turns upon the interpretation of two interrelated, oft-amended statutes. During the period from fiscal year (FY) 2000–2001 through FY 2003–2004, Welfare and Institutions Code section 11453, subdivision (c)(3) made the state's payment of cost of living adjustments (COLA's) to CalWORK's (California Work Opportunity and Responsibility to Kids) grants dependent each year upon California motorists' receipt of "any increase in tax relief" pursuant to a separate statute, Revenue and Taxation Code former

section 10754.[1] In 2003, tax offsets for motorists under Revenue and Taxation Code section 10754 were first suspended and later reinstated by executive action.

Respondents, a certified class of welfare recipients, petitioned for a writ of mandate to compel payment of a COLA they alleged was due on October 1, 2003, pursuant to Welfare and Institutions Code section 11453. We conclude the trial court reached an incorrect interpretation of the relevant statutes and the judgment must be reversed.

## BACKGROUND

### I. *History of the Applicable Statutes*

■ California imposes an annual licensing fee on all vehicles registered in the state. (Rev. & Tax. Code, § 10751 et seq.) This fee, which is construed as a tax (*City of Los Angeles v. Riley* (1936) 6 Cal.2d 621, 622 [59 P.2d 137]), was set at 2 percent of the vehicle's market value before January 1, 2005; in 2005, the fee was reduced to 0.65 percent of market value. (Rev. & Tax. Code, § 10752, as amended by Stats. 2004, ch. 211, § 30.)

### A. *1998 Legislation*

Effective August 1998, the Legislature passed a tax relief measure that provided for a series of potential future offsets against the vehicle licensing fee (VLF). (Stats. 1998, ch. 322, § 2 [enacting Rev. & Tax. Code, former § 10754].) The 1998 enactment of section 10754 set up an intricate system through which various offset levels could be triggered based upon forecasts of the state's general fund revenues. The statute dictated an offset of 25 percent for VLF's in 1999 and 2000, and it established 25 percent as the default offset for years 2001 through 2004. (Rev. & Tax. Code, § 10754, subd. (b)(1) (1998).) In 2001, motorists could receive a 35 percent offset if the forecast of general fund revenue for FY 2000–2001 reached a designated level. (*Id.*, subd. (b)(2).) In 2002, the statute provided for VLF offsets of 35 percent or 46.5 percent depending upon the amount of general fund revenues forecast for FY 2001–2002 and the previous year's offset level. (*Id.*, subd. (b)(3)–(5).)

---

[1] All discussion of Revenue and Taxation Code section 10754 and Welfare and Institutions Code section 11453 concerns former versions of the statutes. Where relevant, a version is parenthetically identified by the year of its enactment. Welfare and Institutions Code section 11453 is sometimes referred to herein as the COLA statute. Revenue and Taxation Code section 10754 is sometimes referred to as the VLF statute.

In years 2003 through 2004, beyond the 25 percent default, motorists could receive VLF offsets of 35, 46.5, 55 or 67.5 percent—again, depending upon the amount of general fund revenues forecast for the fiscal year and the previous year's offset level. (*Id.*, subd. (b)(6)–(15).)

Contemporaneous with its enactment of the VLF statute, the Legislature amended the statute governing adjustments to welfare grants made to reflect increases (or, theoretically, decreases) in the cost of living. (Stats. 1998, ch. 329, § 23 [amending Welf. & Inst. Code, former § 11453].) These amendments to Welfare and Institutions Code section 11453, which went into effect one day after the VLF statute was enacted, made the state's obligation to pay welfare COLA's in years 2000 through 2004 dependent upon the level of tax relief provided to motorists under the VLF statute. Specifically, a new provision in the COLA statute provided: "In any fiscal year commencing with the 2000-01 fiscal year to the 2003-04 fiscal year, inclusive, when there is any increase in tax relief pursuant to the applicable paragraph of subdivision (a) of Section 10754 of the Revenue and Taxation Code, then the increase pursuant to subdivision (a) of this section shall occur. In any fiscal year commencing with the 2000-01 fiscal year to the 2003-04 fiscal year, inclusive, when there is no increase in tax relief pursuant to the applicable paragraph of subdivision (a) of Section 10754 of the Revenue and Taxation Code, then any increase pursuant to subdivision (a) of this section shall be suspended." (Welf. & Inst. Code, § 11453, subd. (c)(3), as amended by Stats. 1998, ch. 329, § 23.) Previously, the statute directed that no COLA's be paid in FY 1990–1991 through FY 1997–1998 and that payment of the COLA for FY 1998–1999 be delayed by four months, until November 1, 1998. (*Id.*, subd. (c)(1).) The 1998 amendments also directed that COLA's were to become effective on October 1 of any year in which they were required. (*Id.*, subd. (a).)

## B. *1999–2002 Legislation*

After the 1998 amendments, the COLA statute was not amended again until 2002. (Stats. 2002, ch. 1022, § 42.) In the meantime, the Legislature amended the VLF statute twice and enacted a related statute. (Stats. 1999, ch. 74, § 1; Stats. 2001, ch. 5, § 1; Stats. 2000, ch. 106, § 1.)

Effective July 7, 1999, the VLF statute was amended to provide that a 35 percent offset would be applied to all VLF's with a final due date in the calendar year beginning January 1, 2000. (Stats. 1999, ch. 74, § 1 [amending Rev. & Tax. Code, § 10754]; Rev. & Tax. Code, § 10754, subds. (a)(1.3) & (b)(1.3) (1999).) Statutory provisions for offsets in other years were left unchanged.

The VLF statute itself was not amended in 2000; however, on July 10, 2000, a new statute, Revenue and Taxation Code section 10754.2, went into effect, providing additional tax relief to motorists. (Stats. 2000, ch. 106, § 1.) This statute directed the Department of Motor Vehicles (DMV) to calculate an additional offset for motorists during 2001 and 2002 if the VLF offset required by section 10754 was less than 67.5 percent. (Rev. & Tax. Code, former § 10754.2, subd. (a)(1), as amended by Stats. 2000, ch. 106, § 1.)[2] Thus, payments from the DMV under Revenue and Taxation Code former section 10754.2 were essentially rebates issued to bring the total VLF offset level in years 2001 and 2002 to 67.5 percent. The statute further provided that VLF offsets implemented pursuant to Revenue and Taxation Code section 10754 would be at least 35 percent in 2001 and 2002 and would be equal to 67.5 percent in 2003 and thereafter. (Rev. & Tax. Code, former § 10754.2, subd. (a)(3).)

The Legislature revised the VLF statute substantially in 2001. Effective July 1, 2001, Revenue and Taxation Code section 10754, subdivision (a) was changed to designate only three VLF offset levels: 25, 35 and 67.5 percent. (Stats. 2001, ch. 5, § 1.) A much simplified revision of section 10754, subdivision (b) provided that the 25 percent offset applied to VLF's with a final due date in calendar year 1999, the 35 percent offset applied to VLF's due after January 1, 2000, and before July 1, 2001, and the 67.5 percent offset would apply to all VLF's due on or after July 1, 2001. (Rev. & Tax. Code, § 10754, subd. (b) (2001).) In the same bill, the Legislature repealed Revenue and Taxation Code section 10754.2 (Stats. 2001, ch. 5, §§ 2–3), thus ending the DMV's obligation to increase VLF offsets through rebates.

Finally, as part of a bill that amended many social welfare provisions, the Legislature amended the COLA statute effective September 28, 2002. (Stats. 2002, ch. 1022, § 42.) The only change was the addition of a new subdivision (c)(4), which stated: "Notwithstanding paragraph (3) [making COLA payments dependent upon an increase in tax relief under the VLF statute], an adjustment to the maximum aid payments set forth in subdivision (a) of Section 11450 shall be made under this section for the 2002–03 fiscal year, but the adjustment shall become effective June 1, 2003." (Welf. & Inst. Code, § 11453, subd. (c)(4), as amended by Stats. 2002, ch. 1022, § 42.)

---

[2] Specifically, subdivision (a)(1) of Revenue and Taxation Code former section 10754.2 provided: "For each vehicle license fee for the initial or original registration of any vehicle, . . . or for any renewal of registration, with a final due date in 2001 or 2002, for which the vehicle license fee offset required by Section 10754 is less than 67 ½ percent, the Department of Motor Vehicles shall concurrently calculate an offset, in addition to the offset required by Section 10754, that is equal to the difference between the following: [¶] (A) A vehicle license fee offset of 67 ½ percent. [¶] (B) A vehicle license fee offset of the greater of 35 percent or that percentage required by Section 10754."

C. *2003 Executive Actions*

The state paid COLA's to CalWORK's recipients on October 1, 2000, and October 1, 2001. By operation of the 2002 amendments to the COLA statute, payment of the October 1, 2002 COLA was postponed until June 1, 2003. (Welf. & Inst. Code, § 11453, subd. (c)(4) (2002).)

All versions of Revenue and Taxation Code section 10754 provided that VLF offsets could be reduced during periods when insufficient moneys were available from the general fund to fund them. (Rev. & Tax. Code, § 10754, subd. (a)(1)(C), (2)(C) & (3)(C) (1999 & 2001).) Citing this provision, on June 20, 2003, the Director of the Department of Finance notified the DMV and the Department of Housing and Community Development that insufficient general fund moneys were available to fund any portion of VLF offsets. VLF offsets were thereby suspended beginning in June 2003. In addition, no COLA was paid to welfare recipients on October 1, 2003.

During his gubernatorial campaign in the fall of 2003, Arnold Schwarzenegger promised to "repeal the car tax increase"—i.e., the suspension of VLF offsets—that had recently occurred under Governor Gray Davis's administration. Governor Davis was recalled in a special election, and Governor Schwarzenegger took office on November 17, 2003. On his first day in office, Governor Schwarzenegger issued Executive Order No. S-1-03. The order stated that the June 20, 2003 letter from the Director of Finance suspending VLF offsets was "rescinded and shall be of no force and effect." (Governor's Exec. Order No. S-1-03 (Nov. 17, 2003).) The order directed the DMV to reinstate the 67.5 percent VLF offset provided by Revenue and Taxation Code section 10754, subdivision (a)(3)(A) (2001 version) "as soon as administratively feasible" and "to refund to taxpayers all overpayments of vehicle license fees paid since . . . June 20, 2003, in excess of amounts due after taking into account the offset provided by Revenue and Taxation Code section 10754(a)(3)(A)." (Governor's Exec. Order No. S-1-03 (Nov. 17, 2003).)

II. *Writ of Mandate Proceedings*

On December 2, 2003, respondent class members[3] filed a petition for writ of mandate seeking an order compelling the Governor and Rita L. Saenz, Director of the Department of Social Services at that time,[4] to issue a supplemental COLA for October through December 2003 and adjust all CalWORK's grants beginning in January 2004 to reflect the addition of this

---

[3] The parties stipulated that the case should be certified as a class action.

[4] Cliff Allenby is the current Director of the Department of Social Services.

COLA—in other words, to pay a COLA retroactive to October 1, 2003. The trial court sustained a demurrer to this petition with leave to amend. The amended petition set forth two theories under which the class claimed a COLA was owed. First, the petition alleged the 67.5 percent VLF offset mandated by the executive order was itself an increase in tax relief triggering payment under the COLA statute. Second, the petition alleged Governor Schwarzenegger's order created an increase in tax relief requiring payment of the COLA because it effectively raised the VLF offset from zero, which it had been under the Davis administration, to 67.5 percent. The trial court overruled a demurrer to this petition and granted a writ of mandate on the class's first theory (deeming the second moot). Judgment was entered on May 24, 2004, and the court issued the writ on June 4, 2004.[5] This appeal followed on June 9, 2004.

### III. Subsequent Statutory Developments

In August 2004, the Legislature amended the VLF and COLA statutes again. Effective August 5, 2004, Revenue and Taxation Code section 10754 was amended to state that the 67.5 percent offset would apply to VLF's due between July 1, 2001, and January 1, 2005, and the VLF statute would be repealed effective January 1, 2005. (Stats. 2004, ch. 211, § 34 [amending Rev. & Tax. Code, § 10754, subds. (a)(3), (b)(3) & (d)].) At the same time, the Legislature amended Revenue and Taxation Code sections 10752 and 10752.1 to reduce the VLF rate from 2 percent of a vehicle's market value to 0.65 percent of market value, beginning January 1, 2005. (Stats. 2004, ch. 211, §§ 30–31.) Thus, rather than continuing with a relatively high, fixed licensing fee and a system of reducing that fee by a series of offsets, the Legislature did away with the offsets and simply reduced the licensing fee.

Pursuant to the terms of Welfare and Institutions Code section 11453, subdivision (c)(3), payment of COLA's was linked to increased tax relief under the VLF statute only for the period between FY 2000–2001 and FY 2003–2004. Effective August 16, 2004, the Legislature amended the COLA statute to suspend for three months the COLA for FY 2004–2005. (Stats. 2004, ch. 229, § 31 [amending Welf. & Inst. Code, § 11453, subd. (d)].) Then, in July 2005, the Legislature amended Welfare and Institutions Code section 11453 again to suspend COLA's entirely in FY 2005–2006 and 2006–2007. (Welf. & Inst. Code, § 11453, subd. (c)(1).)

---

[5] At the hearing on the second demurrer, the deputy attorney general stated the COLA sought for FY 2003–2004 would amount to approximately $10 million per month, or a total of $120 million.

### DISCUSSION

As of October 1, 2003—the date respondents argue a COLA should have been made—Welfare and Institutions Code section 11453 linked payment of COLA's to increased tax relief under Revenue and Taxation Code section 10754, and Revenue and Taxation Code section 10754 provided that, from July 1, 2001, onward, all VLF's would be offset by 67.5 percent (Rev. & Tax. Code, § 10754, subds. (a)(3), (b)(3), as amended by Stats. 2001, ch. 5, § 1). Under the simple terms of the VLF statute that had been in effect since July 1, 2001, tax relief remained stable at 67.5 percent during FY 2003–2004. Thus, the VLF statute provided no "increase" in tax relief that year to trigger a COLA under Welfare and Institutions Code section 11453.

According to the respondent class, however, matters were not so simple. Respondents offered two arguments below for why a COLA was required despite the plain language of the COLA and VLF statutes, and they repeat these arguments here. In the first, respondents maintain that the COLA statute made a specific reference to Revenue and Taxation Code section 10754 as that statute was written in August 1998. Thus, respondents argue, when the COLA statute linked the requirement of a COLA to "any increase in tax relief" under the VLF statute, this meant any increase above the default level of 25 percent that could be attained under the complicated scheme of offsets and triggers laid out in the 1998 VLF statute. In the second argument, respondents contend that even though no statutory increase in the VLF offset level occurred in 2003, a COLA was nevertheless required because, as a result of Governor Davis's suspension of all offsets and Governor Schwarzenegger's reinstatement of the 67.5 percent offset, motorists received an actual increase in tax relief that year—from zero to 67.5 percent. The trial court accepted the first of these arguments and, having so decided, declined to address the second.

Interpretation of a statute raises pure questions of law. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) Accordingly, we review the trial court's resolution of these matters de novo. (*Ibid.*; *Sneed v. Saenz* (2004) 120 Cal.App.4th 1220, 1234 [16 Cal.Rptr.3d 563].)

I. *Interpretation of the COLA Statute*

■ The primary goal in construing a statute is to ascertain legislative intent so as to effectuate the purpose of the law. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323].) To do so, we first examine the language of the statute, giving the words their ordinary, commonsense meaning and according significance to all words used, if possible. (*Id.* at pp. 1386–1387; *Lewis v. County of*

*Sacramento* (2001) 93 Cal.App.4th 107, 119 [113 Cal.Rptr.2d 90].) "The statute's words generally provide the most reliable indicator of legislative intent; if they are clear and unambiguous, '[t]here is no need for judicial construction and a court may not indulge in it.' (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].)" (*Lewis v. County of Sacramento, supra,* 93 Cal.App.4th at p. 119; see also *People v. Pecci* (1999) 72 Cal.App.4th 1500, 1505 [86 Cal.Rptr.2d 43].) However, where "the statutory language is ambiguous on its face or is shown to have a latent ambiguity such that it does not provide a definitive answer, we may resort to extrinsic sources to determine legislative intent. [Citations.]" (*Lewis v. County of Sacramento, supra,* 93 Cal.App.4th at p. 119.)

### A. *No COLA Required in 2003 under Plain Language of the Statute*

■  As discussed, the COLA statute was amended in 1998 to make the issuance of COLA's dependent upon the existence, in any fiscal year from 2000 to 2004, of "any increase in tax relief pursuant to the applicable paragraph of subdivision (a) of Section 10754 of the Revenue and Taxation Code." (Welf. & Inst. Code, § 11453, subd. (c)(3), as amended by Stats. 1998, ch. 39, § 28.) This Revenue and Taxation Code statute, in turn, described a complicated series of offset levels (Rev. & Tax. Code, § 10754, subd. (a)) and triggers (Rev. & Tax. Code, § 10754, subd. (b), as amended by Stats. 1999, ch. 74, § 1) through which motorists could receive tax relief in fiscal years 1999 through 2004. To determine whether a COLA was statutorily required in October 2003, we must discern what the Legislature meant in 1998 by the phrase "any increase in tax relief" added to the COLA statute. (See *People v. Frawley* (2000) 82 Cal.App.4th 784, 793 [98 Cal.Rptr.2d 555] ["Questions of legislative intent must be considered as of the time when the enactment under scrutiny was adopted"]; see also *People v. Cruz* (1996) 13 Cal.4th 764, 775 [55 Cal.Rptr.2d 117, 919 P.2d 731] ["The words of a statute are to be interpreted in the sense in which they would have been understood at the time of the enactment"].) Did it mean an increase over the previous year's tax relief, as appellants argue? Or, did it mean an increase over the baseline offset of 25 percent laid out in the 1998 VLF statute, as respondents contend? And, a related question, did the Legislature intend to make a time-specific reference to the 1998 VLF statute, or did it intend the reference to incorporate future amendments that might be made to the VLF statute?

■  Recently, in *Doe v. Saenz* (2006) 140 Cal.App.4th 960 [45 Cal.Rptr.3d 126], we discussed the rules of construction that apply when a statute

incorporates another statute that changes over time.[6] The matter essentially boils down to a question of legislative intent where, as here, "the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation . . . ." (*In re Jovan B.* (1993) 6 Cal.4th 801, 816 [25 Cal.Rptr.2d 428, 863 P.2d 673]; see also *People v. Anderson* (2002) 28 Cal.4th 767, 779 [122 Cal.Rptr.2d 587, 50 P.3d 368]; *People v. Frawley, supra*, 82 Cal.App.4th at p. 794.) Respondents' interpretation of "increase in tax relief" (Welf. & Inst. Code, § 11453, subd. (c)(3) (1998)) as meaning any increase above the 25 percent baseline offset in the VLF statute makes sense only if the Legislature intended a time-specific reference to the 1998 version of Revenue and Taxation Code section 10754. In 2001, the VLF statute was amended to eliminate the previous system of multiple offset levels and triggers, consequently rendering the 25 percent baseline irrelevant. (Stats. 2001, ch. 5, § 1(a)(3), (b)(3).) By October 2003, the 25 percent default no longer existed. In contrast, appellants' interpretation of "increase in tax relief" as meaning increase over the prior year makes sense regardless of whether the reference to Revenue and Taxation Code section 10754 was intended to be general (i.e., incorporating later changes) or specific. The state's obligation to pay a welfare COLA depended upon whether motorists received increased tax relief, under any version of Revenue and Taxation Code section 10754, as compared with the year before.

■ The key question in this appeal thus centers on the meaning of the triggering phrase "any increase in tax relief pursuant to the applicable paragraph of subdivision (a) of Section 10754 of the Revenue and Taxation Code." (Welf. & Inst. Code, § 11453, subd. (c)(3).) The plain meaning of "increase" is to grow larger in size or amount. (Webster's 9th New Collegiate Dict. (1989) p. 611 ["to become progressively greater (as in size, amount, number, or intensity)"].) When a statute refers to an "increase" occurring "[i]n any fiscal year" (Welf. & Inst. Code, § 11453, subd. (c)(3)), it is logical to construe "increase" as meaning an increase over the previous year; therefore, appellants' interpretation of "increase" as a growth in the VLF offset level from one year to the next has commonsense appeal. As the VLF statute was written in 1998, it was conceivable that offset levels could fluctuate depending on the health of the general fund. Under appellants'

---

[6] The Supreme Court announced a seemingly categorical rule for such situations in *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58–59 [195 P.2d 1]: " 'It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . . [Citations.]' " However, the *Palermo* court went on to state, " '[T]here is a cognate rule, recognized as applicable to many cases, to the effect that where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . .' " (*Id.* at p. 59.)

interpretation, COLA's were required only when the VLF offset level was increased compared with the previous fiscal year; if a lower offset was imposed, or if the offset level remained stable, COLA's would have been suspended. This, in our view, is a perfectly reasonable interpretation of how the statutes were intended to work. In any year when motorists received greater tax relief than they had the year before, welfare recipients would be entitled to a COLA.

Respondents encourage us to reject this plain meaning of "increase," however, based on legislative history of the VLF statute describing the 25 percent reduction as a "permanent[] offset" that would pertain each year unless specified contingencies permitted implementation of a higher offset level—representing an "increase" for purposes of the COLA statute, according to respondents. (Legis. Counsel's Dig., Assem. Bill No. 2797 (1997–1998 Reg. Sess.) Stats. 1998, ch. 322; Legis. Counsel's Dig., Assem. Bill No. 1121 (1999–2000 Reg. Sess.) Stats. 1999, ch. 74.) None of the Legislative Counsel summaries or committee reports we have reviewed describe these higher offset levels as "increases," however. If the Legislature had intended its use of "increase" in the COLA statute to mean the implementation of a superseding VLF offset level, one would expect the word "increase" to appear prominently in the legislative history of the VLF statute, if not in the statute itself. One report analyzing the bill that enacted Revenue and Taxation Code section 10754 described the 25 percent VLF reduction as permanent and noted that "[i]n future fiscal years, the reduction in the VLF rate could be increased if certain conditions are met." (Assem. Budget Com., Analysis of Assem. Bill No. 2797 (1997–1998 Reg. Sess.) as amended Aug. 10, 1998, p. 1.) But this report actually undermines respondents' position because it explains how the complex system of superseding offsets created by the 1998 VLF statute provided for the implementation of new, higher, permanent offset levels. As the report explained: "The reduction in future VLF rate reductions is conditioned upon revenues reaching certain target amounts. If these targets are met for two consecutive years, the VLF rate reductions would become permanent. [¶] . . . [¶] . . . A fiscal year target amount would have to be met for two consecutive fiscal years before the tax reduction would become permanent. If the target is not met for two fiscal years the reduction would fall back to the previous VLF rate." (Assem. Budget Com., Analysis of Assem. Bill No. 2797 (1997–1998 Reg. Sess.) as amended Aug. 10, 1998, pp. 1–2.) In other words, although 25 percent was the starting baseline, new baselines could be established in later years depending upon the state's revenues. If the Legislature intended the default VLF offset to be a moving target, growing in step with growth in general revenues, the idea that welfare COLA's were to be linked to increases from this evolving baseline becomes inconceivable— such a system would have been hopelessly complicated. Moreover, the fact that the 1998 VLF statute anticipated new "permanent" offset levels contradicts

respondents' view of the 25 percent offset level as a static baseline, frozen in time for four years, from which any upward deviation would trigger the requirement of a welfare COLA.

### B.  *Extrinsic Evidence Does Not Support a Contrary Interpretation*

To support their interpretation, respondents raise several arguments based on facts and inferences external to the statutes themselves. We conclude none of this extrinsic evidence supports a departure from the commonsense meaning of the statutory language.

### 1.  *Absurd Results*

Respondents assert the Legislature could not have intended "increase" in the COLA statute to mean increase over the prior year because such an interpretation could have led to "perverse" and "absurd" results. Specifically, they note that, because of the way the triggers worked in the 1998 VLF statute, yearly increases in VLF offsets would have occurred only if state revenues grew at a gradual rate. If revenues grew faster, triggering high VLF offset levels that then leveled off, there would be fewer opportunities for welfare recipients to obtain COLA's. Or, as respondents put it, "welfare recipients would lose out *because* the state's finances were stronger." To some extent, this argument puts the cart before the horse. Although the literal meaning of statutory language may be disregarded to avoid absurd results, "this 'exception should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government. [Citation.] . . . [Citation.]' " (*People v. Pecci, supra,* 72 Cal.App.4th at p. 1507.)

Underlying respondents' absurdity argument is the assumption that the Legislature wished to provide yearly COLA's whenever state revenues were increasing. Respondents cite no legislative history to support this view. In fact, the few indications we have of legislative intent appear to contradict any generous intent to provide COLA's by default. Welfare and Institutions Code section 11453, subdivision (c)(1) specifically directed that *no* COLA's were to be paid from 1990 through 1997. Payment of the 1998 COLA was delayed by four months. (Welf. & Inst. Code, § 11453, subd. (c)(1), as amended by Stats. 1997, ch. 270, § 141.) Then, when it enacted Assembly Bill No. 2779 (1997–1998 Reg. Sess.) in 1998, the Legislature made payment of a COLA dependent for four years on the implementation of increased tax relief for motorists. (Welf. & Inst. Code, § 11453, subd. (c)(3), as amended by Stats. 1998, ch. 329, § 23.) Although the trial court concluded this bill was intended to give welfare recipients increased benefits during a time of economic prosperity, no legislative history supports this "share the wealth" notion. The

Legislative Counsel's summary of Assembly Bill No. 2779 noted only that the bill would revise the dates when COLA's would be made effective and "would suspend the adjustments during specified fiscal years if there has been no increase in tax relief." (Legis. Counsel's Dig., Assem. Bill No. 2779 (1997–1998 Reg. Sess.) Stats. 1998, ch. 329.) No legislative history suggests an intention to grant COLA's more frequently.[7]

Nor have we found support for the trial court's version of legislative intent. The court stated: "[I]t's clear that the Legislature in this case intended that any time a vehicle owner gets a decrease in the amount of vehicle tax that is otherwise due, that decrease becomes an increase in tax relief, which triggers the COLA." Under the trial court's summary, a COLA would have been required when there was any decrease in VLF—i.e., when any tax relief was provided, not just when motorists benefited from *increased* tax relief.

■ The interpretation of Welfare and Institutions Code section 11453 advanced by respondents and the trial court is not directly supported by legislative history, and in our view it contradicts the plain meaning of the statutory language. The language required a COLA "when there is any *increase* in tax relief" under the VLF statute. (Welf. & Inst. Code, § 11453, subd. (c)(3), as amended by Stats. 1998, ch. 329, § 23, italics added.) Under respondents' interpretation, *any* tax relief under the VLF statute would have triggered a COLA so long as it was above the floor of 25 percent (Rev. & Tax. Code, § 10754, subd. (a)(1) (1998).) Needless to say, this 25 percent baseline appears nowhere in the Welfare and Institutions Code statute. More importantly, respondents' interpretation (like the trial court's summary of legislative intent) essentially reads the word "increase" out of the COLA statute. "An appellate court should be 'loathe to construe a statute which has the effect of "adding" or "subtracting" language.' [Citation.]" (*People v. Pecci, supra,* 72 Cal.4th at p. 1504, fn. omitted; see also *Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 894 [113 Cal.Rptr.2d 483].) If the Legislature had intended to mandate welfare COLA's every time motorists received tax relief, or tax relief of greater than 25 percent, it could easily have said so.

Moreover, considering the plain meaning of "increase," it is respondents' interpretation—not appellants'—that carries the potential for absurd results. (See *Sneed v. Saenz, supra,* 120 Cal.App.4th at p. 1235 [a statutory construction leading to absurd consequences is disfavored]; *Jurcoane v. Superior Court, supra,* 93 Cal.App.4th at p. 893 [same].) If the VLF offset ever declined from one fiscal year to the next (for example, going from 46.5 percent to 35 percent), a COLA would be required under respondents'

---

[7] Indeed, under the current version of the COLA statute the state has no obligation to pay welfare COLA's until 2007. (Welf. & Inst. Code, § 11453, subd. (c)(1) [suspending COLA's in FY 2005–2006 and 2006–2007].)

construction of Welfare and Institutions Code section 11453 even though California motorists clearly would have experienced a *decrease* in tax relief.

### 2. *Subsequent Executive Action*

Respondents also contend legislative intent supporting their interpretation can be inferred from the fact that COLA's were paid to welfare recipients in 2000, 2001 and 2002 despite a stable VLF offset level in two of these years. What happened to VLF tax relief during this period is complex. Welfare and Institutions Code section 11453 linked COLA's to increased VLF tax relief in fiscal years 2000–2001 through 2003–2004 and required that they be made effective on October 1 of any year in which they were required. (Welf. & Inst. Code, § 11453, subd. (a).)[8] As of October 1, 2000—the first year of the statutory COLA/VLF linkage—the version of the VLF statute in effect stated that an unconditional offset of 35 percent was to be provided in calendar year 2000 (Rev. & Tax. Code, § 10754, subd. (b)(1.3) (1999)), and an offset of 35 percent was to be provided again in calendar year 2001 if the Director of Finance certified that a revenue target had been met (*id.*, subd. (b)(2)). The VLF statute on its own did not provide for increased tax relief, if increase is construed as "increase over the prior year," because the statute dictated an offset of 35 percent in both 2000 and 2001. Thus, appellants' interpretation of the statutes suggests a COLA was not required in 2000; nevertheless, the Department of Finance provided a COLA on October 1, 2000.

This fact does not require us to reject appellants' reading of the statutes, however. The reason a COLA was provided in 2000 despite the existence of a stable VLF offset under Revenue and Taxation Code section 10754 may lie in the Legislature's enactment that year of additional tax relief for motorists through a separate statute. Effective July 10, 2000, Revenue and Taxation Code section 10754.2 required the DMV to provide rebates to increase motorists' tax relief beyond the levels outlined in the VLF statute. (Stats. 2000, ch. 106, § 1 [enacting Rev. & Tax. Code, former § 10754.2].) Thus, in calendar year 2001, motorists would receive an "effective offset" of 67.5 percent by operation of Revenue and Taxation Code sections 10754 and 10754.2. It may have appeared that a COLA was required due to this "effective" increase in VLF tax relief, even though the increase was not pursuant *only* "to the applicable paragraph of subdivision (a) of Section 10754 of the Revenue and Taxation Code" (Welf. & Inst. Code, § 11453, subd. (c)(3)). Given the complexity of this statutory scheme, and the undeniable increase in tax relief motorists were slated to receive during calendar

---

[8] Because the original version of the VLF statute required the Director of Finance to certify on September 1 that conditions had been met for applying offsets over 25 percent (Rev. & Tax. Code, § 10754, subd. (b)), this arrangement gave the state a month to determine whether COLA's would be paid.

year 2001, it is not surprising that payment of a welfare COLA was authorized in October 2000. Under the circumstances, this extrinsic evidence does not convince us to abandon the plain language of the COLA statute in favor of respondents' ingenious interpretation.

The payment of a COLA in October 2001 does not support respondents' position because this COLA was required in any event under appellants' interpretation of Welfare and Institutions Code section 11453. Effective July 1, 2001, the Legislature amended the VLF statute to provide for three offset levels: 25 percent in 1999, 35 percent in 2000, and 67.5 percent after July 1, 2001. (Rev. & Tax. Code, former § 10754, subd. (b).) Accordingly, by the express terms of the VLF statute, there was an increase in tax relief (from 35 to 67.5 percent) in 2001 such that a COLA was required. Although the "effective offset" remained static, because of the rebate program previously in effect under Revenue and Taxation Code former section 10754.2,[9] Welfare and Institutions Code section 11453 did not condition COLA's on actual tax relief received. COLA's were expressly conditioned on increased tax relief "pursuant to the applicable paragraph of subdivision (a) of Section 10754 of the Revenue and Taxation Code." (Welf. & Inst. Code, § 11453, subd. (c)(3), as amended by Stats. 1998, ch. 329, § 23.)

A COLA was paid again in October 2002, when tax relief remained stable at 67.5 percent by operation of Revenue and Taxation Code section 10754 (as amended in July 2001). However, as we shall explain, this payment does not support respondents' interpretation because the Legislature expressly authorized a COLA *notwithstanding* the requirement of an increase in VLF tax relief, which would otherwise have precluded the COLA. (Welf. & Inst. Code, § 11453, subd. (c)(4) [eff. Sept. 28, 2002].) Payment of the COLA under such express authorization does not suggest the Legislature believed a COLA was due (i.e., because the VLF offset was higher than 25 percent); rather, it evidences the contrary belief that a COLA was not otherwise required.

### 3. *Subsequent Legislative Action*

Finally, although respondents direct us to legislative history surrounding its enactment, the September 2002 amendment to Welfare and Institutions Code section 11453 lends support to appellants' interpretation. Although subsequent declarations of the Legislature are not binding authority, they are appropriate for the court to consider as evidence of the original legislative intent for a measure. (*People v. Cruz, supra,* 13 Cal.4th at p. 781; *Eu v.*

---

[9] Former Revenue and Taxation Code section 10754.2 was repealed by the same 2001 bill that amended Revenue and Taxation Code section 10754 to specify the three offset levels. (Sen. Bill No. 22 (2001–2002 Reg. Sess.); see Stats. 2001, ch. 5, §§ 2, 3.)

*Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289].) Effective September 28, 2002, the Legislature amended Welfare and Institutions Code section 11453 to add a single paragraph, subdivision (c)(4). (Stats. 2002, ch. 1022, § 42.) This new paragraph said: *"Notwithstanding paragraph (3),* an adjustment to the maximum aid payments set forth in subdivision (a) of Section 11450 *shall be made* under this section for the 2002–03 fiscal year, but the adjustment shall become effective June 1, 2003." (Welf. & Inst. Code, § 11453, subd. (c)(4) (2002), italics added.) At the time of this amendment, the VLF statute provided for a single offset level of 67.5 percent, without condition, for all VLF's with a final due date after July 1, 2001. (Rev. & Tax. Code, § 10754, subds. (a)(3), (b)(3), as amended by Stats. 2001, ch. 5, § 1.) Accordingly, tax relief provided under the VLF statute did not increase from year to year after July 2001, and so, under appellants' interpretation of the COLA statute, no COLA would have been due in October 2002. The Legislature seemed to share this interpretation because it directed that a COLA was to be paid for 2002 "[n]otwithstanding" the requirement in Welfare and Institutions Code section 11453, subdivision (c)(3) of an increase in VLF tax relief. (Welf. & Inst. Code, § 11453, subd. (c)(4) (2002).) This language suggests the Legislature thought a COLA was not required under subdivision (c)(3) and had to be expressly authorized. True, the amendment also delayed the payment of this COLA from October 2002 to June 2003, and respondents assert this was the sole purpose of the amendment. However, this reading ignores the opening words of the amendment: *"Notwithstanding* [the link to the VLF statute], an adjustment to the maximum aid payments set forth in subdivision (a) of Section 11450 *shall be made* . . . ." (Welf. & Inst. Code, § 11453, subd. (c)(4) (2002), italics added.) A construction that renders statutory language superfluous or unnecessary is disfavored. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063]; *People v. Frawley, supra,* 82 Cal.App.4th at p. 789.) Moreover, if the only purpose of the amendment was to change the date when the COLA was to be paid, the amendment would have referred to Welfare and Institutions Code section 11453, subdivision (a)(1), which set October 1 as the effective date for COLA's in FY 2000–2001 through FY 2003–2004, not section 11453, subdivision (a)(3), which conditioned COLA's during these years on an increase in VLF tax relief.

█     As support for their interpretation, respondents rely on a statement in legislative committee reports noting that the 2002 amendment would "[d]elay the statutorily required cost-of-living adjustment for recipients of CalWORK's from October 1, 2002, to June 1, 2003." (Assem. Budget Com., Analysis of Assem. Bill No. 444 (2001–2002 Reg. Sess.) as amended June 29, 2002, p. 3; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 444 (2001–2002 Reg. Sess.) as amended June 29, 2002, p. 5.) Respondents argue the phrase "statutorily required" suggests the Legislature

believed a COLA was required under the prior law. We reject this interpretation because it contradicts the language of the amendment. Although resort to legislative committee reports is appropriate when the meaning of a statute is unclear (*People v. Cruz, supra,* 13 Cal.4th at p. 773, fn. 5; *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653, 670 [59 Cal.Rptr.2d 254]), the actual language of a statute bears far more significance than statements by legislative committee members. " '[I]t is the language of the statute itself that has successfully braved the legislative gauntlet. It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed "into law" by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's "legislative history." ' " (*Jurcoane v. Superior Court, supra,* 93 Cal.App.4th at p. 892.)

■ In short, because VLF tax relief was statutorily fixed at 67.5 percent from July 1, 2001, forward, there was no "increase in tax relief" pursuant to the VLF statute during FY 2003–2004. Thus, according to the plain meaning of Welfare and Institutions Code section 11453, subdivision (c)(3), the state incurred no obligation to pay a COLA in October 2003.

II. *Effect of Executive Actions in 2003*

Setting aside their interpretation of the relevant statutes, respondents also claim they are entitled to a COLA for FY 2003–2004 because, after Governor Davis suspended all VLF offsets in June 2003, Governor Schwarzenegger's November 17, 2003, executive order reinstating the 67.5 percent offset triggered the state's obligation to pay a COLA. Since these executive actions created a genuine increase in tax relief for motorists—from zero to 67.5 percent—respondents argue they constituted "an increase in tax relief" for purposes of the COLA statute. However, this argument ignores the specific language of Welfare and Institutions Code former section 11453, subdivision (c)(3). The statute required payment of a COLA "when there is any increase in tax relief *pursuant to the applicable paragraph of subdivision (a) of Section 10754 of the Revenue and Taxation Code.*" (Welf. & Inst. Code, § 11453, subd. (c)(3), as amended by Stats. 1998, ch. 329, § 23, italics added.) Any increase in tax relief California motorists experienced in 2003 was provided by Governor Schwarzenegger's executive order, not by the terms of Revenue and Taxation Code section 10754. We need not decide whether the actions of Governor Davis and Governor Schwarzenegger were valid exercises of executive power (questions the parties here dispute). The point is that the increased VLF offset level in 2003

resulted from executive, not legislative, action. Welfare and Institutions Code section 11453 could have been written to provide COLA's whenever tax relief was increased by any means, but it was not; the statute expressly describes the triggering mechanism as an increase in tax relief "pursuant to" the VLF statute.

Moreover, as a practical matter, the tax relief actually provided to motorists in 2003 remained essentially stable. In his November 17, 2003 executive order, the Governor not only reinstated the 67.5 percent offset, but he also directed the DMV to refund taxpayers all overpayments of VLF's made since offsets were suspended in June 2003. (Governor's Exec. Order No. S-1-03 (Nov. 17, 2003).) As a result of these refunds, all vehicle owners benefited from a 67.5 percent VLF offset in 2003. The question is not whether offsets were eliminated at one time and then reinstated. Clearly, they were. But, as a result of Governor Schwarzenegger's order and the refunds, motorists did not experience a true increase in tax relief in 2003 (let alone an increase pursuant to the VLF statute, as was required to trigger a COLA).

Finally, respondents rely upon statements from Governor Schwarzenegger supporting their argument that a COLA was required for FY 2003–2004. As part of an agenda submitted to the Legislature in November 2003, just after he took office, Governor Schwarzenegger sought legislation to "de-link the CalWORKs COLA from the car tax in order to prevent payment of a CalWORKs COLA, retroactive to October 2003." (Governor's Agenda to 5th Ex. Sess. (Nov. 2003 5th Ex. Sess.) p. 4.) This request was based on the Governor's understanding that a COLA was not provided in October 2003 "[b]ecause the car tax was increased," and his belief that a retroactive COLA would be required "since the car tax increase [was] being rescinded." Likewise, respondents glean support from a November 2003 Legislative Analyst's Office report, which observed that an executive rollback of the VLF rate (i.e., a reinstatement of the VLF offset that had been suspended by Governor Davis) would entail CalWORK's costs. (Legis. Analyst, Rep. on California's Fiscal Outlook: LAO Projections 2003–04 through 2008–09 (Nov. 14, 2003) <http://www.lao.ca.gov/2003/fiscal_outlook_03/03-04_fiscal_outlook.html> [as of Feb. 16, 2007].) As respondents recognize, however, statements by the Governor and the Legislative Analyst "are not binding" authority. Nor are they even relevant, since the interpretation of law is a uniquely judicial function. (*People v. Cruz, supra*, 13 Cal.4th at p. 780; see *Marbury v. Madison* (1803) 5 U.S. (1 Cranch) 137, 2 L.Ed. 60.) We are not bound to follow a misinterpretation of these complicated statutes voiced by individuals outside the Legislature. (See *People v. Cruz, supra*, 13 Cal.4th at pp. 780–781 [refusing to adopt "misinformation" delivered to the Legislature by the Legislative Counsel's Digest and other sources].)

## DISPOSITION

The judgment is reversed and the writ of mandate entered in favor of the respondent class is dissolved. Each side shall bear its own costs on appeal.

Parrilli, J., concurred.

**POLLAK, J.,** Dissenting.—It is difficult to imagine a more Byzantine interrelationship of statutory provisions than this case presents. However, I believe that the trial court correctly found its way through the maze and interpreted the provisions in a manner that conforms to the Legislature's obvious intent and makes sense of the statutory scheme. The trial court construed the principal section in question in the same manner that every branch of government, including the Department of Social Services itself, had construed the section until the department's last-minute and unexplained change of heart. The interpretation now urged by the Attorney General and adopted by the majority produces a result that is not required by the language of the controlling statute and is irreconcilable with any rational explanation of the purpose behind the statute. Hence, I respectfully dissent.

The key provision, as all agree, is Welfare and Institutions Code section 11453, subdivision (c)(3) (section 11453(c)(3) or the COLA statute), as the provision read in 1998 and as it remained in 2003–2004: "In any fiscal year commencing with the 2000–01 fiscal year to the 2003–04 fiscal year, inclusive, *when there is any increase in tax relief pursuant to the applicable paragraph of subdivision (a) of Section 10754* of the Revenue and Taxation Code, then the increase pursuant to subdivision (a) of this section shall occur. In any fiscal year commencing with the 2000–01 fiscal year to the 2003–04 fiscal year, inclusive, when there is no increase in tax relief pursuant to the applicable paragraph of subdivision (a) of Section 10754 of the Revenue and Taxation Code, then any increase pursuant to subdivision (a) of this section shall be suspended." (Stats. 1998, ch. 329, § 23, italics added.) The dispute centers on the italicized phrase, and the problem arises because Revenue and Taxation Code section 10754 (section 10754 or the VLF statute) was repeatedly amended in the manner described in the majority opinion, but section 11453(c)(3) remained unchanged.

There is no dispute over the basic proposition that what must be determined is what was intended by section 11453(c)(3) when it was enacted. "The words of a statute are to be interpreted in the sense in which they would have been understood at the time of enactment." (*People v. Cruz* (1996) 13 Cal.4th 764, 775 [55 Cal.Rptr.2d 117, 919 P.2d 731].) When section 11453(c)(3) was enacted in 1998 (Stats. 1998, ch. 329, § 23), Revenue and Taxation Code section 10754 had just been changed to provide for an offset

from the vehicle licensing fee (VLF) of at least 25 percent for every year from and after 1999, and it contained a series of provisions under which the amount of the offset might be increased to 35 percent, 46.5 percent, 55 percent or 67.5 percent in future years depending on the size of forecasted general fund revenue (Stats. 1998, ch. 322, § 2). The 25 percent reduction was considered to be "permanent." (E.g., Assem. Floor Analysis, Conc. in Sen. Amends. to Assem. Bill No. 2797 (1997–1998 Reg. Sess.) as amended Aug. 10, 1998, p. 1; Assem. Floor Analysis, Conc. in Sen. Amends. to Assem. Bill No. 1121 (1999–2000 Reg. Sess.) as amended June 15, 1999, p. 1.) When section 11453(c)(3) referred to *"any* increase in tax relief pursuant to the applicable paragraph" (italics added) of Revenue and Taxation Code section 10754, it could only have been understood to refer to an increase over the base 25 percent offset. There would have been no point to a specific reference in section 11453(c)(3) to an increase over the base 25 percent because that is what Revenue and Taxation Code section 10754 already said explicitly. Indeed, it is not clear grammatically how or where this additional qualification could have been inserted.

Contrariwise, if the Legislature intended section 11453(c)(3) to require an increase over the tax relief provided in the preceding year, as the Attorney General argues and the majority now construes the provision, that is a qualification not included in Revenue and Taxation Code section 10754 that one would expect the Legislature to have stated explicitly in the COLA statute. The reasonableness of this expectation is emphasized by various statutes cited by respondent in which the Legislature did explicitly include such a qualification. (Ed. Code, § 41851, subd. (c) [school transportation allowances shall not exceed "the prior year's approved home-to-school transportation costs, increased by the amount provided in the Budget Act"]; Fin. Code, § 17207, in certain years (Stats. 1996, ch. 670, § 1, p. 3720; Stats. 2005, ch. 257, § 2, eff. Jan. 1, 2010) [escrow license assessments "shall not increase by more than 25 percent over the amount assessed in the prior year"]; Gov. Code, § 54984.7 [authorization of "standby charges" for water and sewer services "shall not apply if the amount of the assessment is increased . . . compared to the prior year's assessment"]; Lab. Code, § 4659, subd. (c) [average weekly earning limits for state disability insurance shall be increased "by an amount equal to the percentage increase in the 'state average weekly wage' as compared to the prior year"].) No such qualification or allusion to an increase over the prior year is to be found in section 11453(c)(3) or in any of its legislative history.

The majority opinion asserts that none of the legislative history supports the view that the Legislature wished to provide yearly cost of living adjustments (COLA's) whenever state revenues were increasing. (Maj. opn., *ante*, p. 942.) But the trial court's finding "that the Legislature's intent in enacting Welfare and Institutions Code section 11453(c)(3) was to link

provision of the COLA for CalWORKs recipients to increases in tax relief for car owners" is supported by the very language of the statute itself, which can sensibly be understood in no other way. Why else would the Legislature have tied the COLA relief to "any increase in tax relief pursuant to the applicable paragraph of subdivision (a) of section 10754"? The two measures—section 11453(c)(3) and the 1998 amendment of Revenue and Taxation Code section 10754—were enacted within one day of each other. And, in all events, the legislative analysis of the bill by which section 11453(c)(3) was enacted *did* state explicitly that the measure would "[l]ink the implementation of the CalWORKs COLA payment to implementation of" the VLF provisions. (Assem. Floor Analysis, Conc. in Sen. Amends. to Assem. Bill No. 2779 (1997–1998 Reg. Sess.) as amended Aug. 10, 1998, p. 2.) As explained above, the VLF provisions provided for increases in the VLF offset, i.e., tax relief for car owners, as state revenues increased.

Still further, this is the interpretation that was placed on the measure by all agencies of government, including the agency entrusted with enforcement of the COLA provision, until the unexplained reversal of position that led to this litigation. For the calendar year 2000, the VLF offset was 35 percent, pursuant to an amendment to section 10754 that became effective July 7, 1999. (Stats. 1999, ch. 74, § 1.) A COLA was made on October 1, 2000. For 2001, the VLF offset was 67.5 percent, pursuant to the 1999 amendment of section 10754 and a measure that became effective July 10, 2000, adding to the 35 percent offset a rebate to bring the total offset to 67.5 percent. (Stats. 2001, ch. 106, § 1.[1]) A COLA was made on October 1, 2001. In 2002, the VLF offset remained at 67.5 percent, pursuant to a further amendment of section 10754 that raised the offset to 67.5 percent and eliminated the rebate. (Stats. 2001, ch. 5, § 5.) Despite the fact that the offset for 2002 did not increase over the 2001 offset, the offset was greater than 25 percent and a COLA was made on October 1, 2001.[2] Thus, the Department of Social

---

[1] Revenue and Taxation Code section 10754.2 provided that for each VLF in 2001 or 2002 "for which the vehicle license fee offset required by section 10754 is less than 67½ percent, the Department of Motor Vehicles shall concurrently calculate an offset, in addition to the offset required by Section 10754, that is equal to the difference between the following: (A) A vehicle license fee offset of 67½ percent [and] (B) A vehicle license fee offset of the greater of 35 percent or that percentage required by section 10754." It was intended that "[t]he taxpayer shall pay a fee based on a bill from the Department of Motor Vehicles containing the 35% offset, and then would receive a rebate check for the difference between 35% and 67.5%." (Assem. Floor Analysis, Conc. in Sen. Amends. to Assem. Bill No. 858 (1999–2000 Reg. Sess.) as amended June 22, 2000, p. 1.)

[2] It is arguable that the "offset" did increase from 2001 to 2002 because the total offset in 2001 consisted of 35 percent per section 10754 and the additional 32.5 percent rebate per Revenue and Taxation Code section 10754.2. However, viewed in this light, there was no increase between 2000, when the offset was 35 percent, and 2001 when the offset, not including the rebate, remained at 35 percent. A COLA was granted in both 2001 and 2002, so that however the matter is viewed, the Department of Social Services granted a COLA in each

Services did not then interpret the COLA provision to require an increase in the VLF offset over the prior year's offset in order to justify making a cost of living adjustment.

The 2001 and 2002 COLA's were recommended by the Department of Finance, included in the Governor's budget and approved by the Legislature. In neither year did anyone suggest that the COLA's were unauthorized because the VLF offset had not increased from the offset the prior year. Similarly, for the 2002–2003 fiscal year, the Legislature enacted section 11453, subdivision (c)(4), which provided that "[n]otwithstanding paragraph (3), an adjustment to the maximum aid payments . . . shall be made under this section . . . , but the adjustment shall become effective June 1, 2003." (Stats. 2002, ch. 1022, § 42.) It is not clear from the text of this provision whether the "notwithstanding" clause was intended to indicate that section 11453(c)(3) would not otherwise have applied or merely that the effective date of the COLA was being moved back from October 1, as provided in section 11453, subdivision (a), to June of the next year. However, the legislative analyses in both the Senate and the Assembly indicate clearly that the provision was intended to "[d]elay[] the *statutorily required cost-of-living adjustment* for recipients of CalWORKs from October 1, 2002, to June 1, 2003." (Assem. Floor Analysis, Conc. in Sen. Amends. to Assem. Bill No. 444 (2001–2002 Reg. Sess.) as amended June 29, 2002, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 444 (2001–2002 Reg. Sess.) as amended June 29, 2002, p. 4.) Thus, it was understood that the COLA was required for 2003 even though the VLF offset was to remain at 67.5 percent, the same as the preceding year.

And again, after Governor Schwarzenegger reinstated the VLF offset for 2003 following its termination under the prior administration, both the Legislative Analyst and the new administration itself indicated their understanding that the restoration would trigger a COLA for 2003, despite the fact that the offset would remain at the prior level of 67.5 percent. As stated by the Governor in seeking a legislative modification that was not adopted, "Current law requires a CalWORKs grant COLA when there is a reduction in the car tax. Because the car tax was increased for 2003–04, the October 2003 CalWORKs COLA was not provided. However, since the car tax is being rescinded, a CalWORKs COLA would be required by law." (Governor's Agenda to 5th Ex. Sess. (Nov. 2003 5th Ex. Sess.) p. 4.)

Thus, the position now advanced by the Attorney General and adopted in the majority opinion is that the understanding shared by all public officials

year in which the VLF offset exceeded 25 percent, including at least one year in which the VLF offset did not increase from the prior year.

since the enactment of section 11453(c)(3), and found to be correct by the trial court, was mistaken. This startling reinterpretation of the statute disregards the most obvious construction of its language and incorporates a qualification for which there is no support in either the text or the legislative history of the provision.

Moreover, while both sides argue that absurdity results from accepting the other's interpretation of the statute, the respondents have the better argument. No one has suggested any reason why anyone would have thought the benefit of a COLA should be enjoyed by welfare recipients for the four years to which section 11453(c)(3) applies only if the state's revenues increased gradually, each year exceeding the previous year, but not if California was fortunate enough to enjoy greater than anticipated revenues in the earlier years so that car owners would enjoy the maximum VLF reduction in each of those years. Yet, that is how the majority interprets the statute.[3] The contrary argument that it would make no sense to regard an offset which is less than the offset in the prior year as an "increase" in tax relief is a play on words. There is no disagreement over the meaning of the word "increase" and there is no debate that an offset in one year of 67.5 percent would not be an increase in an offset the prior year of 67.5 percent. But that is not the question. When section 11453(c)(3) speaks of an increase in tax relief, the question is, an increase over what? The statute answers that question: an increase pursuant to section 10754, which means an increase over the 25 percent permanent offset provided in section 10754. There is nothing absurd about this commonsense reading of the statute. As the trial judge put it, "Every time an increase over and above the 25 percent was granted, regardless of what it was, the COLA statutes were triggered. . . . I mean if the increase were 35 percent and stayed at 35 percent let's say for all of these years . . . automobile owners would still get tax relief of 10 percent over and above that which is otherwise statutorily provided. And to say that automobile owners take a hit is really mischaracterizing it. They don't—they don't get as much of a break as they got the year before but they still get a break. And that's the point of the statute. Every

---

[3] Citing *McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 222–223 [89 Cal.Rptr.2d 295] and *Myers v. King* (1969) 272 Cal.App.2d 571, 579 [77 Cal.Rptr. 625] and respondent also makes another valid point: "Under appellants' interpretation of the COLA statute, . . . no COLA was possible after October 2000, because the VLF was permanently set at 67.5% for 2001 and beyond. Yet the COLA statute links the COLA to VLF relief for three more years (through 2003–2004). Appellants' interpretation, therefore, suggests that the Legislature's amendment of the VLF statute effectively amended the COLA statute as well, to delete its 'to the 2003–04 fiscal year' language and render the link effective for a single year only. The implied amendment of one statute by the express amendment of another is strongly disfavored."

time automobile owners get a break, COLA increases kick in." I see no absurdity in this conclusion. To the contrary, it is the only interpretation predicated on a rational explanation of what the Legislature was trying to accomplish by the unique COLA provision that it adopted for the four-year period ending with the 2003–2004 fiscal year that is in question.

I would affirm the decision of the trial court.

Respondents' petition for review by the Supreme Court was denied June 13, 2007, S151347. Kennard, J., Chin, J., and Moreno, J., were of the opinion that the petition should be granted.