[No. F046608. Fifth Dist. Mar. 13, 2006.]

In re ENRIQUE O., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ENRIQUE O., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A., II.B., II.D. and II.E.

**COUNSEL**

Gayathri Murphy and Linnea Johnson, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Louis M. Vasquez, Kathleen A. McKenna and Kelly C. Fincher, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**ARDAIZ, P. J.**—Enrique O. appeals from a juvenile court's true finding that he committed sexual battery and vandalism. He contends we must reverse the finding for multiple reasons: (1) that there was insufficient evidence he possessed the specific intent to commit sexual battery; (2) that the prosecution failed to prove he knew the wrongfulness of his actions; (3) that the juvenile court erred in failing to send notices pursuant to the Indian Child Welfare Act; (4) that the juvenile court erred by not considering less restrictive placement options to inpatient treatment; and (5) that the juvenile court improperly considered information obtained in violation of the psychotherapist/patient privilege. We reject each of these contentions and we affirm the orders of the juvenile court.

## I.

### Factual and Procedural History

In September of 2002 appellant and Carlos Q. cornered Alex T. (hereafter Alex or the victim) in a school restroom. The boys were all 11 years old. No one else was in the restroom. Appellant hit Alex and tried to pull down his pants. Carlos and appellant eventually got Alex's pants and underwear down to his knees. Alex fell to the ground, and appellant and Carlos kicked him. Appellant touched Alex's bare behind with appellant's bare hands and his exposed penis. Alex testified that appellant and Carlos struck and kicked him, and that he ran out of the restroom and reported the incident to the principal.

In a separate incident, on June 17, 2003, appellant and Carlos cut a tube at a pumping station, allowing approximately 800 gallons of diesel fuel to spill. Appellant was questioned at home about the incident and admitted he had cut the tube with Carlos and two other friends and caused other damage at the pumping station. Appellant told the officer he understood it was wrong to do so.

Based on these two incidents the Kings County District Attorney filed a petition in November of 2003 to declare appellant a ward of the juvenile court pursuant to Welfare and Institutions Code section 602.[1] The petition alleged felony violations of sexual battery (Pen. Code, § 243.4, subd. (a)), and vandalism over $400 (Pen. Code, § 594, subd. (a).)

On February 26, 2004, after a contested jurisdictional hearing, the juvenile court found both allegations true but reserved making a determination of

---

[1] Further statutory references are to the Welfare and Institutions Code except as otherwise noted.

whether the violations would be felonies or misdemeanors. (Pen. Code, § 17, subd. (b).) Appellant then failed to appear for the dispositional hearing and was ultimately picked up on a bench warrant on May 6, 2004. On May 10, 2004, the court found reasonable efforts had been made to prevent removal of the minor from the mother's home and placed appellant in juvenile hall pending the next hearing three days later. On May 13 the court released appellant to his mother, but ordered that she bring him to juvenile hall one day prior to any further court proceedings so the court would have time to issue a bench warrant if he failed to appear.

A contested dispositional hearing was held on June 4, 2004. At that hearing the court ordered a section 241.1 report be prepared for the minor and ordered him to reside with his grandfather. On September 7, 2004, a section 241.1 report was filed, recommending further wardship. Appellant's probation officer recommended group home placement based on the aggressive nature of the sexual offense, appellant's home situation, and the officer's belief that an aggressive sexual assault could not be counseled on an outpatient basis. The report noted that appellant had been doing well since residing with his grandfather, but also expressed concerns about the others living in the home.

On October 7, 2004, the court declared the offenses felonies and followed the probation department's recommendation for wardship. The court also ordered appellant placed in a group home and to receive inpatient treatment for the sexual battery offense. The court calculated the maximum period of confinement at four years, eight months. This appeal timely follows.

## II.

### Discussion

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *Application of the ICWA*

█ Appellant next argues that the matter must be remanded for compliance with the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.) The ICWA applies only in "child custody" proceedings involving Indian children. Child custody proceedings, for purposes of the ICWA, include foster care placements (family or institutional), termination of parental rights actions, preadoptive placements, and adoptive placements. (25 U.S.C. § 1903(1).)

---

*See footnote, *ante*, page 728.

The statute expressly excludes placements and proceedings "based upon an act which, if committed by an adult, would be deemed a crime." (*Ibid.*) Thus, it has long been presumed that the ICWA does not apply to out-of-home placements that arise from delinquency proceedings. (*Adoption of Lindsay C.* (1991) 229 Cal.App.3d 404, 408 [280 Cal.Rptr. 194] ["The language of the Act makes but two exceptions: it does not apply to the custody provisions of a divorce decree nor to delinquency proceedings. (25 U.S.C. § 1903(1).)"]; *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 701 [127 Cal.Rptr.2d 54] [noting same]; *State, in Interest of D.A.C.* (1997) 993 P.2d 993, 1000 [Court of Appeals of Utah court noting same]; *In re Adoption of S.S.* (1995) 167 Ill.2d 250, 257 [212 Ill.Dec. 590, 657 N.E.2d 935] [Supreme Court of Illinois, same]; *Yavapai-Apache Tribe v. Mejia* (1995) 906 S.W.2d 152, 162 [Texas court stating that ICWA "does not include divorce or juvenile delinquency proceedings."].)

Appellant acknowledges that proceedings under section 602 "are not subject to the ICWA, when placement is based on a criminal act" since the ICWA expressly excludes its application to "a placement based upon an act which, if committed by an adult, would be deemed a crime . . . ."[2] (25 U.S.C. § 1903(1).) Nevertheless, appellant argues that section 602 proceedings are not necessarily excluded from application of the ICWA because not all custody issues involved in 602 proceedings are "based on" the criminal act that initiated the proceedings. To support this position, appellant points to a new California Rule of Court requiring ICWA notices in all section 601 and 602 hearings "in which the child is at risk of entering foster care or is in foster care" effective January 1, 2005. (Cal. Rules of Court, rule 1439 (b).)

■ In California, the notice provisions of the ICWA are implemented by California Rules of Court, rule 1439. Delinquency proceedings, on the other hand, are governed by sections 601 and 602. Section 602 provides for declaring persons under 18 years of age wards of the juvenile court when they violate any laws other than age-based curfew laws. (§ 602.) Section 601 defines disobedience and truancy and allows for adjudication of a minor as a ward of the court for certain truant and disobedient behavior. (§ 601.) Appellant's claim is that, though his proceedings arose generally out of the section 602 petition based on his criminal acts, he was ordered placed into a group home "based on" his needs and the need to remove him from his mother's home rather than his criminal acts.

---

[2] Thus, to the extent appellant argues that federal funding could possibly be jeopardized by a failure to comply with the ICWA in section 602 proceedings, we disagree. We deny appellant's request for judicial notice of budget related administrative agency documents as not relevant. (See *American Cemwood v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 441 [104 Cal.Rptr.2d 670].)

We disagree. Regardless of whether the ICWA might be implicated in certain section 602 proceedings where dependency jurisdiction is invoked due to the needs of the Indian child, this is not such a case. Rather, in this case the juvenile court expressly sought to determine whether dependency jurisdiction might be appropriate here instead of delinquency jurisdiction and the court determined it would not be. Thus, while appellant argues that his placement in foster care was "primarily based, not on a criminal act, but on the best interests of the child," the record belies this assertion. While we agree the record reflects the court's obvious concerns about the general care and well-being of appellant, we are unpersuaded that his placement outside of his mother's home was "based on" anything other than the crimes he committed that landed him in front of the juvenile court to begin with. This is made clear by the fact that the juvenile court actually ordered a section 241.1 "dual status" report to determine the relationship, if any, to appropriate dependency proceedings and the report itself concluded the *nature of appellant's criminal sexual offense* made wardship (and eventually group home placement) necessary. This is not a case where criminal activity simply highlights a situation that results in removal from the home for reasons in the home; rather, the offenses appellant committed here placed him squarely and unavoidably within the delinquency exception of the ICWA. Thus, appellant cannot avoid the fact that his placement outside the home was a result of his violation of two Penal Code sections that unquestionably were acts which, "if committed by an adult, would be deemed a crime." (25 U.S.C. § 1903(1).)

■ Further, we note that the interpretation appellant seeks of California Rules of Court, rule 1439 would render the rule inconsistent with the federal statute on which it is based, which is an untenable result. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011 [32 Cal.Rptr.3d 89, 116 P.3d 550]; see also *Reno v. Baird* (1998) 18 Cal.4th 640, 660 [76 Cal.Rptr.2d 499, 957 P.2d 1333].)[3] Appellant nevertheless argues that "if a state law concerning child custody proceedings provides a higher standard of protection to the rights of a parent or Indian custodian than federal law, the court may apply the higher standard." (25 U.S.C. § 1921.) We agree, however, the Judicial Council endeavors to "establish rules governing practice and procedure in the juvenile court *not inconsistent with the law*." (§ 265, italics added; see also *Sara M. v. Superior Court, supra,* 36 Cal.4th at p.1011, citing *In re Richard S.* (1991) 54

---

[3] We express no opinion as to whether section 602 proceedings could *ever* fall within the ambit of the ICWA. It may be possible for section 602 proceedings to be initiated based on, for example, underage drinking. Because the "minor in possession" statutes provide their own punishments and the only permissible punishments under the governing statutes are fines and community service, a minor who for whatever reason ran the risk of foster care after being in possession of substances deemed suitable only for adults may be entitled to tribal participation in their placement. (See, e.g., Bus. & Prof. Code, § 25662 [possession of alcohol by a minor proscribing fines and community service]; Pen. Code, § 308, subd. (b) [possession of cigarettes by a minor, proscribing fines and community service].) That is not the issue before us, however.

Cal.3d 857, 863 [2 Cal.Rptr.2d 2, 819 P.2d 843] ["The rules have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions."].) Thus, we do not interpret the California Rules of Court here to expressly contradict the ICWA by ordering ICWA notices and procedures to occur in all out of home placements arising out of acts that would be deemed crimes if committed by an adult. (*Sara M. v. Superior Court, supra,* 36 Cal.4th at pp. 1013–1014 [discussing need for some deference to Judicial Council's interpretation of a statute]; *People v. Hall* (1994) 8 Cal.4th 950, 963 [35 Cal.Rptr.2d 432, 883 P.2d 974] ["[T]he Judicial Council's authority . . . does not extend to the adoption of rules that are inconsistent with governing statutes . . . ."].)

Further, we note that such an interpretation of California Rules of Court, rule 1439 would not be without practical consequences. The burden and delay caused by application of ICWA notice requirements in every section 602 proceeding where the delinquent is "at risk" of entering foster care should not be ignored. Apart from the uncertainty, paperwork and financial burden on the courts and counties inevitably resulting from such a rule, it also creates a serious risk of delaying the resolution of delinquency matters which would rarely, if ever, be of benefit to a child. Moreover, even if we were to interpret rule 1439 as appellant desires, he would still have to show prejudice to justify reversal here. Any rule created in excess of ICWA's requirements would be a statutory right subject to a *Watson*[4] standard of review. Thus, while appellant contends courts are required to provide notice to, and presumably allow intervention by, Indian tribes when Indian children fall under the jurisdiction of the delinquency court in certain delinquency proceedings, he must show how the failure to do so has prejudiced him in some way. Generally an Indian child who commits a crime will be subject to the same punishment and rehabilitation as a non-Indian child, and invoking the extensive noticing scheme of the ICWA in such cases would do nothing to change that.[5] The tribe, while now on notice, would still have no power or authority to usurp the powers of the juvenile court in rehabilitating and/or punishing the minor. Nor would notice in a such a case further any goal of the ICWA. The intent of the ICWA is "to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) How would this goal possibly be furthered by notifying tribes that an Indian child is now subject to the rehabilitative, punitive and revocable powers of a nontribal juvenile court? In other words, appellant is essentially demanding we order notice for notice's sake, which we will not do.

---

[4] *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

[5] We note the juvenile court here did seek "input" from the tribe about an appropriate placement for appellant. That was certainly not improper; it was simply not *required* by federal law.

▆ Accordingly, we find the ICWA inapplicable to appellant's proceedings and, even if we were to accept appellant's interpretation of California Rules of Court, rule 1439, he could show no prejudice here.

D., E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Vartabedian, J., and Dawson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 28, 2006, S142891. Baxter, J., did not participate therein.

---

*See footnote, *ante*, page 728.