[No. C060573. Third Dist. Dec. 17, 2009.]

R.R., a Minor, etc., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

Counsel

Paulino G. Duran, Public Defender, Arthur L. Bowie and Randi Barrat, Assistant Public Defenders, for Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Jeffrey D. Firestone, Deputy Attorneys General, for Real Party in Interest.

Opinion

**BLEASE, Acting P. J.**—The issue presented by this petition is whether provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) apply in juvenile delinquency proceedings where the child is at risk of entering foster care, but where a termination of parental rights is not involved.

Congress passed the Indian Child Welfare Act of 1978 (ICWA) in response to a concern over the "consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." (*Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 32 [104 L.Ed.2d 29, 36, 109 S.Ct. 1597].) ICWA creates concurrent, but presumptively tribal, jurisdiction in custody cases of Indian children not domiciled on the reservation. (490 U.S. at p. 36 [104 L.Ed.2d at pp. 38–39].) For custody proceedings that do take place in state court, ICWA provides certain procedural safeguards, including requirements for notice, appointment of counsel, parental and tribal rights of intervention and petition for invalidation of illegal proceedings, and for consent to termination of parental rights. (490 U.S. at p. 36 [104 L.Ed.2d at pp. 38–39].) Substantively, ICWA mandates placement preferences for Indian children. (490 U.S. at p. 37 [104 L.Ed.2d at p. 39].)

Federal law expressly exempts from ICWA's reach cases involving the placement of a child based upon an act by the child that would be deemed a crime if committed by an adult. (25 U.S.C. § 1903.) Historically, this has meant that most juvenile delinquency proceedings have been exempt from ICWA, because they are based on a juvenile's act of committing a crime. However, in 2006 California passed legislation imposing upon the court,

county welfare department, and probation department a duty of inquiry and notice in any proceeding brought pursuant to Welfare and Institutions Code section 602 where the child is at risk of entering foster care or is in foster care.[1] Section 602 brings within the jurisdiction of the juvenile court cases involving the commission of a crime by a minor. The duty in such cases is to inquire whether a child is or may be an Indian Child, and to provide notice to the child's parents or guardian, Indian custodian, and tribe of the right to intervene in the proceeding, the right to counsel for the parents or Indian custodian, and the right to transfer the proceeding to tribal court. (§§ 224.2, 224.3.)

In addition to this statutory mandate, the Judicial Council has adopted rules of court governing the requirements of inquiry and notice, as well as rules governing intervention, transfer, and the ultimate placement of the child. (Cal. Rules of Court, rules 5.481–5.484.) These rules are specifically made applicable to proceedings under section 602 in which the child is at risk of entering foster care or is in foster care. (Cal. Rules of Court, rule 5.480.)

In spite of this authority, respondent Sacramento County Juvenile Court determined pursuant to its own standing order that California law does not require the application of ICWA to a juvenile delinquency proceeding where the case plan does not include the termination of parental rights.[2]

We disagree with the juvenile court's conclusion. While ICWA may not by its own terms apply to a juvenile delinquency case in which the case plan anticipates foster care placement, the California Legislature has expressly made the inquiry and notice requirements of ICWA applicable in such cases, and impliedly made the remaining ICWA requirements applicable in such cases as well. Because ICWA sets the minimum standards for the protection of Indian children with respect to their tribal relationships, California law imposing a higher standard is not inconsistent with the purpose of the federal law, and is not preempted.

## FACTUAL AND PROCEDURAL BACKGROUND

R.R. first appeared in Sacramento County Juvenile Court pursuant to a section 602 petition alleging misdemeanor battery with serious bodily injury

---

[1] References to an undesignated section are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Title 25 United States Code section 1903 defines child custody proceedings to include foster care placements, the termination of parental rights, hearings for preadoptive placements, and hearings for adoptive placements. Only foster care placements do not involve the termination of parental rights. Thus, the juvenile court concedes any delinquency proceeding involving the termination of parental rights would be subject to ICWA.

and felony assault with a deadly weapon. The petition alleged R.R. beat his mother's boyfriend with a baseball bat during an argument between the mother and the boyfriend.

At the time of the initial detention, R.R. was under the jurisdiction of the Contra Costa Juvenile Court as a dependent child pursuant to section 300. R.R. admitted the misdemeanor battery, and the felony assault allegation was dismissed in the interest of justice. The court determined R.R.'s best interest would be served through dependency, and the matter was transferred to Contra Costa County. Contra Costa County placed R.R. on six months' probation. When R.R. violated probation, Contra Costa terminated dependency jurisdiction and transferred the delinquency case to Sacramento, where R.R.'s mother lived.

R.R. was adjudged a ward of the Sacramento Juvenile Court in April 2008, and was committed to the Warren E. Thornton Youth Center. In June 2008, the probation department filed a motion for violation of probation, alleging R.R. failed to follow youth center rules, engaged in fighting, and participated in gang-related activities. R.R. was arraigned on the violation and ordered detained in juvenile hall. The probation department recommended that after R.R. completed a commitment to juvenile hall, he should be committed to the custody of the probation officer for suitable in-state out-of-home foster care placement. Specifically, the probation officer determined such placement was appropriate "based on [R.R.'s] previous dependency history, the fact that all his siblings remain in long term placement and the minor[']s refusal to participate in counseling programs."

At a regularly scheduled settlement conference, R.R.'s counsel requested the court find ICWA applicable to R.R.'s case. R.R. is a registered member of the Crow Creek Sioux Tribe of Fort Thompson, South Dakota. The ICWA matter was argued to the referee, and the referee issued a ruling finding that R.R. was an Indian child and that ICWA applied. The judge of the juvenile court became aware of the ruling, and granted a rehearing on the court's own motion.

Relying on its own standing order SSC-JV-05-057, the juvenile court vacated the referee's order and found ICWA was not applicable to the proceeding. Standing order SSC-JV-05-057 concluded that Senate Bill No. 678 (2005–2006 Reg. Sess.) does not require application of the inquiry and notice provisions of ICWA in a juvenile delinquency proceeding for a minor for whom the case plan does not include the termination of parental rights. For purposes of this discussion, Senate Bill No. 678 is now codified at section 224 et seq.

The standing order further concluded that rule 5.480(1) of the California Rules of Court, which requires the application of ICWA to any *delinquent* minor's case when the minor is "at risk of entering foster care or is in foster care" directly contradicted the expressed intent of Congress and the California Legislature. In reaching this conclusion, the standing order pointed to title 25 United States Code section 1903(1), which states that child custody proceedings for purposes of ICWA "shall not include a placement based upon an act which, if committed by an adult, would be deemed a crime," and section 224.1, subdivision (c), which states that an " 'Indian child custody proceeding' means a 'child custody proceeding' within the meaning of Section 1903 of the Indian Child Welfare Act . . . ."

The juvenile court found that the Judicial Council "exceeded its authority to clarify the federal ICWA statute and California statutory scheme by applying California Rules of Court, rule 5.480(1) to delinquency cases . . . ."

R.R. filed a petition for writ of mandate to compel the juvenile court to vacate its order refusing to apply ICWA. We issued an alternative writ, directing the juvenile court to grant the requested relief or show cause why it had not done so. Further proceedings in this matter were stayed pending disposition of this petition.[3]

DISCUSSION

I

The Federal Indian Child Welfare Act Does Not Apply by
Its Own Terms in Most Juvenile Delinquency Proceedings

In passing ICWA, Congress expressly assumed "the responsibility for the protection and preservation of Indian tribes and their resources . . . ." (25 U.S.C. § 1901(2).) Congress found that the most vital resource to the continued existence and integrity of the tribes was their children, and that the United States has a direct interest in protecting Indian children. (25 U.S.C. § 1901(3).) Congress also found that too many Indian families had been broken up by the often unwarranted removal of their children by nontribal public and private agencies, which agencies placed the children in non-Indian foster care, adoptive homes, and institutions. (25 U.S.C. § 1901(4).)

---

[3] We have been informed by the juvenile court that it will comply with our order by vacating its ruling denying application of ICWA to R.R. and issuing a new order suspending juvenile delinquency proceedings to permit compliance with ICWA as soon as the stay is lifted. Until this occurs, and until a placement order is issued, the matter is not moot.

■ Therefore, Congress's explicit purpose in passing ICWA was "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902.) ICWA " 'seeks to protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society.' [Citation.] It does so by establishing 'a Federal policy that, where possible, an Indian child should remain in the Indian community,' *ibid.*, and by making sure that Indian child welfare determinations are not based on 'a white, middle-class standard which, in many cases, forecloses placement with [an] Indian family.' [Citation.]" (*Mississippi Choctaw Indian Band v. Holyfield, supra*, 490 U.S. at p. 37 [104 L.Ed.2d at p. 39], fn. omitted.)

■ As is relevant to this case, if ICWA applies, the consequences are to require notice to the child's parent or Indian custodian and to the child's tribe, to provide for the transfer of the proceedings to the jurisdiction of the tribe if the parent, Indian guardian, or tribe petitions for transfer and the tribe accepts such jurisdiction, to allow the intervention of the child's tribe in the state court proceeding, and to mandate placement preferences for the child. (25 U.S.C. §§ 1911, 1912(a), 1915(b).) In determining whether ICWA applies in this case, we turn to the language of the federal statute.

The transfer and intervention provisions of ICWA are applicable, "[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child . . . ." (25 U.S.C. § 1911(b), (c).) The notice provisions are applicable, "[i]n any involuntary proceeding in a State court," seeking the "foster care placement" of a child, "where the court knows or has reason to know that an Indian child is involved . . . ." (25 U.S.C. § 1912(a).) The placement preferences apply to "[a]ny child accepted for foster care . . . ." (25 U.S.C. § 1915(b).)

"Foster care placement" is defined by ICWA as "removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." (25 U.S.C. § 1903(1)(i).) However, the placement terms defined by ICWA do not include "a placement based upon an act which, if committed by an adult, would be deemed a crime or upon an award, in a divorce proceeding, of custody to one of the parents." (25 U.S.C. § 1903(1).)

■ Accordingly, the Guidelines for State Courts; Indian Child Custody Proceedings (Guidelines), published by the Bureau of Indian Affairs (BIA), provide that most juvenile delinquency proceedings are not covered by ICWA. (44 Fed.Reg. 67587 (Nov. 26, 1979).) The only juvenile delinquency proceedings that are covered by ICWA are proceedings involving status offenses such as truancy and incorrigibility, which can be committed only by children, and delinquency proceedings that result in the termination of a parental relationship. (44 Fed.Reg. 67587.)

R.R. argues he was not subject to the crime exception set forth in ICWA because his risk for foster care placement was based on violations of probation rather than on criminal acts. He argues his out-of-home placement is being recommended as a direct result of his violation of the youth center contract, which would not be deemed a crime if committed by an adult.

The People argue that in determining whether the exception for placements "based upon an act which, if committed by an adult, would be deemed a crime" applies, we must look to the underlying act that brings the juvenile within the court's jurisdiction. In this case, that act is the misdemeanor battery R.R. admitted committing.

We need not determine in this case whether the criminal act exception should be based on the act upon which the court's jurisdiction rests or upon the act immediately preceding the placement. We assume for purposes of this discussion that ICWA does not by its own terms apply to the case before us because of the criminal act exception. We conclude the provisions contained in ICWA nonetheless apply as provided by California law.

II

California Law Provides That ICWA Is Applicable in
Delinquency Proceedings Where the Child Is at Risk of
Entering Foster Care

Prior to 2005, it had long been accepted in California that ICWA did not apply to juvenile delinquency proceedings. (See *In re Enrique O.* (2006) 137 Cal.App.4th 728, 733 [40 Cal.Rptr.3d 570] ["it has long been presumed that the ICWA does not apply to out-of-home placements that arise from delinquency proceedings"]; *Adoption of Lindsay C.* (1991) 229 Cal.App.3d 404, 408 [280 Cal.Rptr. 194] ["The language of the Act makes but two exceptions: it does not apply to the custody provisions of a divorce decree or to delinquency proceedings."].)

■ In 2005, the California rule of court dealing with the application of ICWA was amended. Former rule 1439 was amended to make it applicable to proceedings under section 602 (delinquency proceedings) in which the child was at risk of entering foster care or was in foster care. The rule was amended to clarify that the probation department had a duty in "juvenile wardship proceedings" where the child was at risk of entering foster care or was in foster care, to inquire whether the child may be an Indian child.

In 2006, the Legislature passed Senate Bill No. 678 (2005–2006 Reg. Sess.). Senate Bill No. 678, in pertinent part added sections 224 through 224.6, and amended section 727.4 to the Welfare and Institutions Code. As is relevant here, section 224.3 makes its provisions applicable to proceedings under a section 602 (delinquency) petition.

The purpose of the state law is to protect "the essential tribal relations and best interest of an Indian child by promoting practices, in accordance with the [ICWA] and other applicable law, designed to prevent the child's involuntary out-of-home placement and, whenever that placement is necessary or ordered, by placing the child, whenever possible, in a placement that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with the child's tribe and tribal community." (§ 224, subd. (a)(1).)

■ State law differs from federal law in that it imposes on the court and probation department "an affirmative and continuing duty to inquire whether a child for whom a petition under Section . . . 602 is to be, or has been, filed is or may be an Indian child in all dependency proceedings and in any juvenile wardship proceedings if the child is at risk of entering foster care or is in foster care." (§ 224.3, subd. (a).) Section 602 provides for the jurisdiction of the juvenile court to adjudge a person under the age of 18 to be a ward of the court when he or she violates the law. Thus, California law, unlike ICWA, imposes a duty of inquiry in juvenile proceedings arising out of an act which would be deemed a crime if committed by an adult, where the child is at risk of being placed in foster care or is in foster care.

In addition to the duty of inquiry, section 224.3, subdivision (d) imposes a duty to provide notice in cases involving an Indian child. Notice must be given to the parents, Indian custodian, tribe, and BIA. (§ 224.2, subd. (a).) The notice must contain information generally identifying the proceeding, the child, the child's tribe, and the child's ancestors, and must contain a statement of the following:

"(i) The absolute right of the child's parents, Indian custodians, and tribe to intervene in the proceeding.

"(ii) The right of the child's parents, Indian custodians, and tribe to petition the court to transfer the proceeding to the tribal court of the Indian child's tribe, absent objection by either parent and subject to declination by the tribal court.

"(iii) The right of the child's parents, Indian custodians, and tribe to, upon request, be granted up to an additional 20 days from the receipt of the notice to prepare for the proceeding.

"(iv) The potential legal consequences of the proceedings on the future custodial and parental rights of the child's parents or Indian custodians.

"(v) That if the parents or Indian custodians are unable to afford counsel, counsel will be appointed to represent the parents or Indian custodians pursuant to Section 1912 of the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.).

"(vi) That the information contained in the notice, petition, pleading, and other court documents is confidential, so any person or entity notified shall maintain the confidentiality of the information contained in the notice concerning the particular proceeding and not reveal it to anyone who does not need the information in order to exercise the tribe's rights under the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.)." (§ 224.2, subd. (a)(5)(G).) If such notice is provided and no determinative response (that the child is or is not a member of or eligible for membership in a tribe) is received from either a tribe or the BIA within 60 days of receipt of notice, the court may determine that ICWA does not apply to the proceedings. (§ 224.3, subd. (e)(3).)

█ Section 224.3 is the only section of the California legislation implementing ICWA that expressly applies to juvenile delinquency proceedings.[4] The duties expressly imposed under section 224.3 on the court, county welfare department, and probation department are duties of inquiry and notice. However, the notice required under section 224.3 includes notice of the right to intervene, the right to transfer the proceeding to tribal court, and the right to counsel. Since the notice would be meaningless without the underlying substantive right, we may infer section 224.3 confers these rights in delinquency matters as well.

---

[4] Section 727.4 also requires the court or probation officer to notify the child's parents or guardian, Indian custodian, and tribe of certain postplacement hearings.

Additionally, section 224.3, subdivision (e)(3), states that if notice has been provided and neither a tribe nor the BIA responds within the statutory timeframe, the court may determine that ICWA does not apply to the proceedings, provided the court shall reverse such determination and apply the act prospectively if it is subsequently confirmed that the child is an Indian child. The converse is implicit. Thus, if the tribe or the BIA makes a timely confirmation that the child is an Indian child, then ICWA does apply to the proceedings.

The People argue that the Legislature was "almost exclusively focused" on dependency cases, evidenced by the fact that the Legislative Counsel's summary does not mention delinquency, the legislation itself contains only two statutes that concern delinquency, and the Governor's signing statement makes no mention of extending ICWA to delinquency cases.

Even if the Legislature were "almost exclusively" focused on dependency rather than delinquency cases in reforming Indian child placement procedures, it was not completely focused on dependency cases. We cannot simply ignore the language of section 224.3 requiring inquiry and notice in delinquency proceedings. Furthermore, the clear implication of this section is that all of the ICWA protections apply in delinquency proceedings if the child is at risk of entering foster care or is in foster care.

The Legislative Counsel's summary of the bill does not provide that the legislation is inapplicable to delinquency proceedings. Even if it did, we would have to disregard it because of the conflicting statutory language. The summary does not have the force of law, and it is for this court to interpret the statutory language. (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 597–598 [30 Cal.Rptr.3d 320].) Nor are the statements by the Governor binding, since the interpretation of a statute is a judicial function. (*Guillen v. Schwarzenegger* (2007) 147 Cal.App.4th 929, 948 [55 Cal.Rptr.3d 87].)

■ The People also argue that we should look to section 224.1 to determine whether ICWA applies. That section defines a number of terms used in the statutes relating to Indian children. As is relevant here, it provides that an "Indian child custody proceeding" means a "child custody proceeding" within the meaning of title 25 United States Code section 1903, "including a proceeding for temporary or long-term foster care . . . ." (§ 224.1, subd. (c).) As previously discussed, "child custody proceedings" under title 25 United States Code section 1903 do not include delinquency proceedings to the extent they are based on an act which, "if committed by an adult, would be deemed a crime . . . ."

Section 224.1 and section 224.3 are not in conflict; they merely cover different proceedings. Section 224.3 specifically applies to juvenile wardship proceedings brought under section 602, and is not limited by the section 224.1 definition of an Indian child custody proceeding. Any conflict may be reconciled by giving each statute its appropriate range of application. To conclude otherwise would require us to ignore the plain language of section 224.3, which specifically imposes upon the court, the county welfare department, and the probation department a duty of inquiry and notice in cases involving a petition under section 602 where the child is at risk of entering foster care or is in foster care.

As previously noted, the notice required by this section includes the notice of certain rights provided under ICWA. If we accepted the People's argument, we would also have to ignore the clear implication of section 224.3, subdivision (e)(3) that ICWA applies to the proceedings if either the tribe or BIA acknowledges that the child is a member of or eligible for membership in the tribe.

■ The People argue that certain California Rules of Court mandate results that the Legislature "could not have intended." Specifically, rule 5.484(a) provides that the court cannot order placement of an Indian child unless it finds by clear and convincing evidence that remaining with the parent is "likely to cause the Indian child serious emotional or physical damage . . . ." The People argue that while this requirement makes sense in dependency cases, in delinquency cases it could bar placement for a minor who needs treatment for the protection of society. Also rule 5.483 mandates the transfer of a case to the tribal court of the child's tribe if the child is a ward of the tribal court or if the child resides on the reservation of a tribe that has exclusive jurisdiction over child custody proceedings. The People argue this rule, if applied in delinquency cases, would substantially interfere with the duty of the delinquency court to protect society from the minor's delinquent behavior.

■ We conclude these concerns are addressed by the California statutory definition of children who are "at risk of entering foster care" based upon the juvenile court's jurisdiction over them pursuant to sections 601 and 602. While the federal definition of foster care placement is broad, encompassing "temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated," "foster care" for purposes of a section 601 or 602 proceeding is

strictly limited by state statute. (25 U.S.C. § 1903(1)(i); see § 727.4, subd. (d)(1).)[5] Moreover, "at risk of entering foster care" as used with reference to a section 601 or 602 proceeding, means "that conditions within a minor's family may necessitate his or her entry into foster care unless those conditions are resolved." (§ 727.4, subd. (d)(2).)

The definition of the phrase, "at risk of entering foster care" found in section 727.4, subdivision (d)(2) is the appropriate definition of the phrase in section 224.3 because the same wording is used and because section 727.4 specifically deals with placements in delinquency cases.

Thus, if, as the People speculate, there are minors who are placed in foster care to protect society from their delinquent behavior, they would not be subject to the state-mandated application of ICWA. The distinction to be drawn is between children for whom foster care placement is being considered because they cannot or should not be returned to their homes for their own safety, security, or well-being, and children for whom foster care placement is being considered for the protection of society. This is a factual determination for the trial court. Only Indian children who are "at risk of entering foster care" or are in foster care are covered by the state-mandated application of ICWA.[6]

---

[5] Foster care, pursuant to section 727.4, subdivision (d)(1), is defined as "residential care provided in any of the settings described in Section 11402." As is applicable in a juvenile delinquency proceeding, these are (1) the approved home of a relative; (2) the licensed family home of a nonrelative or the approved home of a nonrelative extended family member as described in section 362.7; (3) a licensed group home as described in section 11400, subdivision (h) (i.e., "a nondetention privately operated residential home, organized and operated on a nonprofit basis only . . . that provides services in a group setting to children in need of care and supervision") if a placement worker has documented that the placement is necessary to meet the treatment needs of the child and the facility offers those treatment services; (4) an exclusive-use home; (5) a licensed transitional housing placement facility as described in section 11400 (a licensed community care facility for persons 16 to 18 years of age who are in out-of-home placement and who are participating in an independent living program) and Health and Safety Code section 1559.110; and (6) an out-of-state group home, if the placement worker complies with all other statutory requirements for placing a minor in such a home and documents that the requirements of Family Code section 7911.1 have been met.

[6] In this case, the juvenile court found that R.R. was at risk of entering foster care. This finding is supported by the probation officer's recommendation that R.R. be placed in foster care rather than returned home "based on his previous dependency history, the fact that all his siblings remain in long term placement and the minor[']s refusal to participate in counseling programs . . . ." We are not presented with a child who is in foster care as provided in section 224.3. However, a similar test should apply for a child who is in foster care at the time of the offense, and for whom a different foster care setting is contemplated. Any different standard would be anomalous, as would a requirement that ICWA apply where there is no intent to remove the child from the current foster care setting.

This distinction is consistent with the following comments regarding the coverage of ICWA found in the federal Guidelines.

"The entire legislative history makes it clear that the Act is directed primarily at attempts to place someone other than the parent or Indian custodian in charge of raising an Indian child—whether on a permanent or temporary basis. Although there is some overlap, juvenile delinquency proceedings are primarily designed for other purposes. Where the child is taken out of the home for committing a crime it is usually to protect society from further offenses by the child and to punish the child in order to persuade that child and others not to commit other offenses.

"Placements based on status offenses (actions that are not a crime when committed by an adult), however, are usually premised on the conclusion that the present custodian of the child is not providing adequate care or supervision." (44 Fed.Reg. 67587 (Nov. 26, 1979).)

▇▇▇ The California Rules of Court expressly make ICWA as codified by California statute applicable to proceedings under section 602 where the child is at risk of entering foster care or is in foster care. (Cal. Rules of Court, rule 5.480.) Unlike the statutory provisions, which do not expressly make ICWA's placement standards and preferences applicable to delinquency cases, the rules specifically apply the standards and preferences of a placement under ICWA to delinquency proceedings where the child is at risk of entering foster care or is in foster care.[7] (Cal. Rules of Court, rule 5.484.)

---

[7] California Rules of Court, rule 5.484 provides in pertinent part: "In any child custody proceeding listed in rule 5.480, the court may not order placement of an Indian child unless it finds by clear and convincing evidence that continued custody with the parent or Indian custodian is likely to cause the Indian child serious emotional or physical damage and it considers evidence regarding prevailing social and cultural standards of the child's tribe, including that tribe's family organization and child-rearing practices. [¶] . . . [¶] . . . Unless the court finds good cause to the contrary, all placements of Indian children in any proceeding listed in California Rules of Court, rule 5.480 must follow the specified placement preferences in . . . Welfare and Institutions Code section 361.31."

California Rules of Court, rule 5.480 states that ICWA, as codified by California statute, "applies to all proceedings involving Indian children that may result in an involuntary foster care placement . . . including: [¶] (1) Proceedings under Welfare and Institutions Code section 300 et seq., and sections 601 and 602 et seq. in which the child is at risk of entering foster care or is in foster care . . . ."

Section 361.31, subdivision (b) provides that the foster care placement preferences for an Indian child are, in descending priority: "(1) A member of the child's extended family, as defined in Section 1903 of the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.). [¶] (2) A foster home licensed, approved, or specified by the child's tribe. [¶] (3) An Indian foster home licensed or approved by an authorized non-Indian licensing authority. [¶] (4) An institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs."

■    The Legislature has authorized the Judicial Council to establish rules governing practice and procedure in juvenile court that are not inconsistent with law. (§ 265.) Rules of court have the force of law and are as binding as procedural statutes as long as they are not inconsistent with statutory or constitutional law. (*In re Juan C.* (1993) 20 Cal.App.4th 748, 752–753 [24 Cal.Rptr.2d 573].)

■    To determine whether the rule regarding placement preferences is inconsistent with legislative enactment, we turn to section 727.1, which governs the placement of minors who have been ordered to foster care under the supervision of the probation officer. Subdivision (a) of that section states that placement, in order of priority, shall be with "relatives, tribal members, and foster family, group care, and residential treatment pursuant to Section 7950 of the Family Code." Family Code section 7950 states that its placement preferences "shall not be construed to affect the application of the Indian Child Welfare Act . . . ." (Fam. Code, § 7950, subd. (b).)

This scheme is not inconsistent with the preference provisions set forth in California Rules of Court, rule 5.484(b). The rule lists the order of preference of section 361.31, which provides: "(1) A member of the child's extended family, as defined in Section 1903 of the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.). [¶] (2) A foster home licensed, approved, or specified by the child's tribe. [¶] (3) An Indian foster home licensed or approved by an authorized non-Indian licensing authority. [¶] (4) An institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs." (§ 361.31, subd. (b).) The first preference, the child's extended family as defined by ICWA, is not inconsistent with the first two preferences found in section 727.1; i.e., relatives and tribal members. Title 25 United States Code section 1903(2) defines an "extended family member" as being defined by the law or custom of the child's tribe or, in the absence of such law or custom, the child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. The remaining preferences found in section 727.1 are specifically made subject to ICWA, and thus cannot be inconsistent.

We acknowledge that *In re Enrique O., supra,* 137 Cal.App.4th 728, held that California Rules of Court, former rule 1439, the predecessor to rules 5.480 et seq., did not apply to section 602 delinquency proceedings because such an interpretation would have rendered the rule inconsistent with the federal statute upon which it was based. (137 Cal.App.4th at p. 734.) Because the Judicial Council may not establish rules that are inconsistent with the law, the court refused to interpret former rule 1439 in a manner that expressly contradicted

ICWA. (137 Cal.App.4th at p. 734.) However, *In re Enrique O.* was decided in March 2006, prior to the passage of Senate Bill No. 678 (2005–2006 Reg. Sess.) later that year. As indicated, Senate Bill No. 678 provides the legislative authority for the rules of court applying ICWA to section 602 proceedings.

*In re Alejandro A.* (2008) 160 Cal.App.4th 1343 [74 Cal.Rptr.3d 44], also cited by the People, was decided after the passage of Senate Bill No. 678 (2005–2006 Reg. Sess.). It also was a delinquency proceeding in which the juvenile argued there was substantial evidence he was an Indian child, thus an inquiry should have been made to determine such before any disposition order was made. (160 Cal.App.4th at p. 1347.) The court rejected the juvenile's contention, based primarily on the fact that there was no evidence the juvenile was Native American. (*Ibid.*) The court also held the juvenile was not at risk of entering foster care because the Breaking Cycles program, to which the juvenile was committed, was not in the nature of a foster home. (*Id.* at p. 1348.) Additionally, no foster care was contemplated because there was no restriction on parental rights based on parental abuse or neglect. (*Ibid.*)

However, in dicta, the court stated that section 224.3 expanded the reach of ICWA only to proceedings relating to parents or Indian custodians because title 25 United States Code section 1921 allows states to pass more stringent laws with respect to protecting the rights of a parent or Indian custodian. (*In re Alejandro A., supra,* 160 Cal.App.4th at p. 1348.) The implication is that states may not pass laws more protective of the Indian child in its relationship to the tribe. We shall conclude in the next section that states may do exactly that, because ICWA merely established minimum protections, and does not preempt state legislation that is more protective of Indian children with respect to their tribal relationships.

### III

### Federal Law Does Not Preempt State Law That Is More Protective

The language of the federal statute and federal Guidelines indicates the states may, as California has done, pass laws that are more protective than federal law of the relationship between the Indian tribes and their children.

Title 25 United States Code section 1902 provides that ICWA establishes *minimum* standards "for the removal of Indian children from their families and the placement of such children in foster or adoptive homes . . . ."

Because these standards are expressly defined as minimum standards, the undeniable implication is that higher standards may be implemented by states or by the federal government. Such higher standards must be in furtherance of the expressed policy of ICWA, which is: (1) to protect the best interest of Indian children, (2) to promote the stability and security of Indian tribes, and (3) to promote the stability and security of Indian families. (25 U.S.C. § 1902.)

■ The federal Guidelines are in agreement. The introduction to the Guidelines states: "In some instances a state may wish to establish rules that provide even greater protection for rights guaranteed by the Act than those suggested by these guidelines. These guidelines are not intended to discourage such action. Care should be taken, however, that the provision of additional protections to some parties to a child custody proceeding does not deprive other parties of rights guaranteed to them by the Act." (44 Fed.Reg. 67584–67585 (Nov. 26, 1979).) Even though the Guidelines are not binding on state courts, they are entitled to great weight as administrative interpretation of a statute. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1422, fn. 3 [285 Cal.Rptr. 507].)

Elsewhere, the Guidelines indicate that, of all the rights ICWA seeks to protect, the rights of the child and the Indian tribe are paramount. Title 25 United States Code section 1921 provides that: "[W]here State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard."

The Guidelines restate the statutory language, but add that in applying some other federal or state law, states may "not infringe any right accorded by the Indian Child Welfare Act to an Indian tribe or child." (44 Fed.Reg. 67586 (Nov. 26, 1979).) The commentary to the Guidelines explains that this section applies when, for example, state law imposes a higher burden of proof for removing a child from the home, or gives parents greater access to documents. (44 Fed.Reg. 67586 (Nov. 26, 1979).) However, Congress did not intend this section to have the effect of eliminating the specific rights given to tribes and Indian children where a court concludes such rights are in derogation of a parental right guaranteed by state statute. (*Ibid.*)

■ The ICWA provisions limiting the application of ICWA to placements that are not "based upon an act which, if committed by an adult, would be deemed a crime," do not preempt California law applying such provisions

in section 602 proceedings where the child is at risk of entering foster care, because the California provisions are consistent with the force and purpose of the federal law. ■ Federal preemption of state law may arise in three ways: (1) by an express statement of the extent to which the enactment preempts state law, (2) by regulating the area to such an extent that an intent exclusively to occupy the field is implied, or (3) by virtue of a conflict between state and federal law. (*In re Brandon M.* (1997) 54 Cal.App.4th 1387, 1393 [63 Cal.Rptr.2d 671].) The first two principles do not apply to ICWA. (54 Cal.App.4th at p. 1396.)

■ This leaves the third issue—whether section 224.3, applying ICWA to some juvenile delinquency proceedings is in direct conflict with title 25 United States Code section 1903, which excludes ICWA's application to placements based upon acts which, if committed by an adult, would be crimes. As to this issue, the United States Supreme Court's approach has been that " 'State jurisdiction is pre-empted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority.' (*New Mexico v. Mescalero Apache Tribe* (1983) 462 U.S. 324, 334 [103 S.Ct. 2378, 2386, 76 L.Ed.2d 611].)" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 259, fn. 7 [126 Cal.Rptr.2d 639]; see *In re Brandon M., supra,* 54 Cal.App.4th at p. 1397.)

■ The interests protected by ICWA are " 'the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society.' House Report, at 23, [U.S. Code Cong. & Admin. News 1978, at 7546]." (*Mississippi Choctaw Indian Band v. Holyfield, supra,* 490 U.S. at p. 37 [104 L.Ed.2d at p. 39].) California law is more protective than ICWA of tribal interests because it provides for the application of ICWA in a broader range of cases. Thus, it is not incompatible with federal or tribal interests, but provides the higher standard of protection to those interests, as allowed under the terms of ICWA.

■ State law imposes a duty of inquiry and notice in wardship proceedings brought under section 602. This duty attaches as soon as the court, county welfare department, or probation department becomes aware that foster care placement is seriously under consideration. If the determination is made that the juvenile is an Indian child, ICWA applies to the proceedings as set forth by state law and the rules of court adopted for the administration of the law.

## DISPOSITION

Let a peremptory writ of mandate issue commanding the respondent Sacramento County Juvenile Court to enter an order in this case vacating its order of October 16, 2008, denying the application of the Indian Child Welfare Act to this case, and reinstating the September 11, 2008, order of Referee Lindsey ordering notice to the minor's tribe and the procurement of services for a qualified Indian expert. The alternative writ is discharged. The stay issued by this court shall remain in effect pending issuance of the remittitur.

Raye, J., and Hull, J., concurred.