Filed 6/26/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents;<br><br>CITY OF LOS ANGELES et al.,<br><br>    Real Parties in Interest and Respondents. | B243849<br><br>(Los Angeles County<br>Super. Ct. No. BS108180) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Reversed and remanded.

David Holmquist, John F. Walsh, and Gregory L. McNair; Strumwasser & Woocher, Gregory G. Luke, and Rachel A. Deutsch for Plaintiff and Appellant.

Troutman Sanders, Paul L. Gale, and Peter R. Lucier; John F. Krattli, County Counsel, and Charles Douglas Lovejoy, Deputy County Counsel, for Defendants and

Respondents County of Los Angeles, Wendy L. Watanabe, as Auditor-Controller for the County of Los Angeles, and Successor Agency to the Community Redevelopment Commission of the County of Los Angeles, and for Real Parties in Interest and Respondents Los Angeles County (General Fund), Los Angeles County Accumulated Outlay Fund, Los Angeles County Library, Los Angeles County Road District No. 1, Consolidated Fire Protection District of Los Angeles County, Los Angeles County Fire – Forester and Fire Warden, Bell Gardens Lighting District, Los Angeles County Lighting Maintenance District No. 1697, Los Angeles County Flood Control District, Los Angeles County Flood Control DR IMP District, Los Angeles County Flood Control Maintenance, Belvedere Garbage Disposal District, Firestone Garbage Disposal District, Mesa Heights Garbage Disposal District, Consolidated Maintenance Sewage District, Wilmington Cemetery District, Los Angeles County West Vector Control District, Los Angeles County Sanitation District, Los Angeles County Sanitation District No. 23 – Refuse T & D System, Los Angeles County Sanitation District No. 1 Operating, and Antelope Valley Resource Conservation District.

Carpenter, Rothans & Dumont, Steven J. Rothans, Justin Reade Sarno, and Steven J. Wysocky for Defendant and Respondent Successor Agency to the South Gate Community Development Commission and Real Party in Interest and Respondent City of South Gate.

Olivarez Madruga, Terence J. Gallagher, and Matthew Schuman for Defendant and Respondent Successor Agency to the Cudahy Redevelopment Agency and Real Parties in Interest and Respondents City of Cudahy and City of Cudahy Lighting District Zone 1.

Richards, Watson & Gershon and Gregory M. Kunert for Defendants and Respondents Successor Agency to the San Fernando Redevelopment Agency, Successor Agency to the West Hollywood Community Development Commission, and Successor Agency to the Huntington Park Community Development Commission.

No appearance for Defendants and Respondents City of Los Angeles, Successor Agency to Community Redevelopment Agency of the City of Los Angeles, Successor

Agency to the Dissolved Redevelopment Agency of the City of Carson, Successor Agency to Culver City Redevelopment Agency, Successor Agency to the Dissolved Lynwood Redevelopment Agency, Successor Agency to Redevelopment Agency of the City of Long Beach, Successor Agency to Maywood Redevelopment Agency, and Successor Agency to the City of Vernon Redevelopment Agency.

No appearance for Real Parties in Interest and Respondents City of Carson, City of Huntington Park, City of Long Beach, City of Lynwood, City of Maywood, City of San Fernando, City of Vernon, City of West Hollywood, Culver City, Southern California Rapid Transit District, Compton Creek Mosquito Abatement District, Greater Los Angeles County Vector Control, West Hollywood Lighting Maintenance District, City of Long Beach Area – Southern California Metropolitan Water District, City of Los Angeles Area – Southern California Metropolitan Water District, City of San Fernando Area – Southern California Metropolitan Water District, Central Basin – Southern California Metropolitan Water District, West Basin – Southern California Metropolitan Water District, Central Basin Municipal Water District, and West Basin Municipal Water District.

_____

In this writ of mandate proceeding, the superior court entered a July 3, 2012 judgment requiring defendant and respondent County of Los Angeles to include in its calculation of plaintiff and appellant Los Angeles Unified School District's (LAUSD) property tax allocation base the property tax revenue that LAUSD actually received from local Educational Revenue Augmentation Funds (ERAF's).  The resulting increase in LAUSD's property tax allocation base will cause a corresponding increase in LAUSD's allocation of community redevelopment project mitigation or passthrough payments under Health and Safety Code section 33607.5.

In this appeal from the July 3, 2012 judgment, LAUSD contends the judgment and orders implementing the judgment do not sufficiently increase its property tax allocation base and, therefore, do not sufficiently increase its passthrough payments.  LAUSD

3

argues that its property tax allocation base must also include its share of the property tax revenue that was *diverted* from the ERAF's by the Triple Flip and Vehicle Licensing Fee Swap (VLF Swap) legislation. (Stats. 2003, 5th Ex. Sess. 2003-2004, ch. 2, § 4.1; Stats. 2004, ch. 211, §§ 30-31, pp. 2332-2333.) LAUSD seeks to revise the judgment and related orders such that its share of the diverted ERAF revenue will be added to its property tax allocation base, which will further increase its share of passthrough payments under Health and Safety Code section 33607.5.

We conclude LAUSD's contention is correct. The relevant property tax allocation statutes and the California Supreme Court's analysis of the Triple Flip and VLF Swap legislation in *City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707 (*City of Alhambra*) support LAUSD's contention that its share of the diverted ERAF revenue must be included in the calculation of its property tax allocation base, which will result in a corresponding increase in its share of passthrough payments under Health and Safety Code section 33607.5. We therefore reverse and remand for further proceedings.

## BACKGROUND

Upon completion of a redevelopment project, the resulting increase in property tax revenue (sometimes referred to as the property tax increment) is allocated by Health and Safety Code section 33607.5 (sometimes referred to as the passthrough legislation) among the affected local taxing entities, including schools.[1] The passthrough legislation

---

[1] After a redevelopment project is established, the redevelopment agency must share or pass through a portion of the increased property tax revenue or property tax increment with "affected local taxing entities, including schools. The Legislature declared passthrough payments are 'necessary . . . to alleviate the financial burden and detriment that affected taxing entities may incur as a result of the adoption of a redevelopment plan, and payments made pursuant to this section will benefit redevelopment project areas.' ([Health & Saf. Code,] § 33607.5, subd. (f)(1)(A).) Passthrough payments uniquely benefit schools in that they are deemed to contain fixed percentages of property tax and non-property-tax revenue, and only the latter may be used for educational

4

allocates the property tax increment "'among the affected taxing entities . . . in proportion to the percentage share of property taxes each affected taxing entity . . . receives during the fiscal year the funds are allocated . . . .' (Health & Saf. Code, § 33607.5, subd. (a)(2).)" (*LAUSD I*, *supra*, 181 Cal.App.4th at p. 422.)[2]

In 2007, LAUSD filed the present petition for writ of mandate to compel defendants County of Los Angeles, City of Los Angeles, and several community redevelopment and other local agencies (collectively, the County),[3] to increase its allocation of passthrough payments under Health and Safety Code section 33607.5.  To this end, LAUSD challenged the omission of ERAF revenue from its property tax allocation base.

Initially, the superior court entered a judgment denying LAUSD's petition based on its determination that ERAF revenue was properly omitted from LAUSD's property tax allocation base and, therefore, no increase in LAUSD's passthrough payments was warranted.  However, in LAUSD's appeal from the initial judgment, we reversed the trial court's ruling and concluded that ERAF revenue should be included in LAUSD's

facilities.  (Health & Saf. Code, § 33607.5, subd. (a)(4).)" (*Los Angeles Unified School Dist. v. County of Los Angeles* (2010) 181 Cal.App.4th 414, 422, fn. omitted (*LAUSD I*).)

[2]     We use the term "property tax allocation base" to refer to the percentage share of property taxes that an affected taxing entity (LAUSD) receives during the fiscal year the funds are allocated.

[3]     The defendants are:  County of Los Angeles; Wendy L. Watanabe, as Auditor-Controller for the County of Los Angeles; Successor Agency to the Community Redevelopment Commission of the County of Los Angeles; Successor Agency to the South Gate Community Development Commission; Successor Agency to the Cudahy Redevelopment Agency; Successor Agency to the San Fernando Redevelopment Agency; Successor Agency to the West Hollywood Community Development Commission; Successor Agency to the Huntington Park Community Development Commission; City of Los Angeles; Successor Agency to Community Redevelopment Agency of the City of Los Angeles; Successor Agency to the Dissolved Redevelopment Agency of the City of Carson; Successor Agency to Culver City Redevelopment Agency; Successor Agency to the Dissolved Lynwood Redevelopment Agency; Successor Agency to Redevelopment Agency of the City of Long Beach; Successor Agency to Maywood Redevelopment Agency; and Successor Agency to the City of Vernon Redevelopment Agency.

property tax allocation base. (*LAUSD I*, *supra*, 181 Cal.App.4th 414.) In reaching this conclusion, we relied on subdivision (d)(5) of sections 97.2 and 97.3 of the Revenue and Taxation Code (jointly, subdivision (d)(5)), which incorporates the ERAF legislation into the yearly allocation of property taxes under section 96.1.[4] (*LAUSD I*, *supra*, 181 Cal.App.4th at pp. 424-427.) For reasons that will become apparent later in this opinion, we note the allocation statute we relied upon in *LAUSD I*, section 96.1, is "the A.B. 8[5] property tax revenue allocation system's principal statute." (*City of Alhambra*, *supra*, 55 Cal.4th at p. 722.)

Subdivision (d)(5) states in relevant part: "For purposes of allocations made pursuant to Section 96.1 . . . , the amounts allocated from the Educational Revenue Augmentation Fund pursuant to this subdivision, other than amounts deposited in the Educational Revenue Augmentation Fund pursuant to . . . the Health and Safety Code, shall be deemed property tax revenue allocated to the Educational Revenue Augmentation Fund in the prior fiscal year."

---

[4]     All further undesignated statutory references are to the Revenue and Taxation Code.

[5]     "Following the passage of Proposition 13, the property tax allocation system has been governed by article 2 of chapter 6 of part 0.5 of division 1 of the Revenue and Taxation Code, section 96 et seq., primarily sections 96.1, 96.2, and 96.5. Under these statutes, in every current fiscal year, each local entity receives property tax revenues equal to what it received in the prior year (also referred to as its base) (§ 96.1, subd. (a)(1)), plus its proportional share of any increase in revenues due to growth in assessed value within its boundaries, which is defined as the "'annual tax increment'" (§ 96.1, subd. (a)(2); see §§ 96.2, 96.5). The sum of these two amounts—the prior year base plus the current year's proportional share of the tax increment—becomes each jurisdiction's new base amount for the following year's calculations. (§§ 96.1, subd. (a)(1), 96.5.) Named after the Assembly bill that originally enacted the fundamental structure of this statutory scheme, this system is commonly referred to as the 'A.B. 8' allocation system, with section 96.1 as its principal statute. (*City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 8-9, 49.) Under this statutory allocation system, 'the proportional allocations established in the first fiscal year following the passage of Proposition 13, as modified for the following fiscal year, are perpetuated year after year, unless modified by the Legislature.' (*Id.* at p. 9.)" (*City of Alhambra*, *supra*, 55 Cal.4th at p. 713.)

As we stated in *LAUSD I*, "[s]ubdivision (d)(5) plainly and unambiguously states that property tax revenue shifted to ERAF's under sections 97.2 and 97.3 is deemed property tax revenue allocated to the ERAF's. Given that, in the County's words, 'ERAFs are merely an accounting device,' we are compelled to conclude that any property tax revenue deemed allocated to ERAF's under subdivision (d)(5) necessarily qualifies as property tax revenue to the school that received it." (*LAUSD I*, *supra*, 181 Cal.App.4th at p. 426.)

Following our decision in *LAUSD I*, the superior court conducted further proceedings that resulted in the present judgment and orders that, in accordance with *LAUSD I*, require the County to include the ERAF revenue that was actually received by LAUSD in the calculation of LAUSD's property tax allocation base. However, the judgment and orders rejected LAUSD's contention that its property tax allocation base should also include its share of the property tax revenue that was *diverted* from the ERAF's by virtue of the Triple Flip and VLF Swap legislation as ERAF revenue.

In this appeal from the judgment and orders implementing the judgment, LAUSD contends the property tax revenue it would have received from the ERAF's but for the diversions required by the Triple Flip and VLF Swap legislation must be included in the calculation of its property tax allocation base, which will result in a corresponding increase in its allocation of passthrough payments.

## DISCUSSION

The resolution of this appeal requires the statutory interpretation of the 2004 amendment to Health and Safety Code section 33607.5, subdivision (a)(2). Because there are no disputed issues of material fact, the appeal presents a purely legal question.

Health and Safety Code section 33607.5, subdivision (a)(2) provides in relevant part that passthrough "payments made pursuant to this section to the affected taxing entities . . . shall be allocated among the affected taxing entities . . . in proportion to the percentage share of property taxes each affected taxing entity . . . receives during the

7

fiscal year the funds are allocated, which percentage share shall be determined without regard to any amounts allocated to a city, a city and county, or a county pursuant to Sections 97.68 [the Triple Flip legislation] and 97.70 [the VLF Swap legislation] of the Revenue and Taxation Code, and without regard to any allocation reductions to a city, a city and county, a county, a special district, or a redevelopment agency pursuant to Sections 97.71, 97.72, and 97.73 of the Revenue and Taxation Code and Section 33681.12."

Before analyzing this statute, we must first discuss the Triple Flip and VLF Swap legislation. Because the Supreme Court's analysis of the Triple Flip and VLF Swap legislation in *City of Alhambra*, *supra*¸ 55 Cal.4th 707, provides persuasive if not controlling authority for the disposition of this appeal, we quote at length from that decision below.

## I.     The Triple Flip

The Supreme Court discussed the Triple Flip legislation in *City of Alhambra* as follows:

"In 2004, the voters approved Proposition 57, the Economic Recovery Bond Act, which allowed the state to sell up to $15 billion in bonds to close the state budget deficit. (Gov. Code, § 99050.) In order to create a dedicated revenue source to guarantee repayment of these bonds without raising taxes, the Legislature had already passed section 97.68, a temporary revenue measure that shifts revenue in a three-stage process known as the 'Triple Flip.' (Stats. 2003, 5th Ex. Sess. 2003-2004, ch. 2, § 4.1, p. 7108.) In the first 'flip,' 0.25 percent of local sales and use tax revenues are diverted to the state for bond repayment. (§§ 97.68, subd. (b)(2), 7203.1, 7204.) In the second 'flip,' the lost local sales and use tax revenues are replaced by property tax revenue that would have been placed in the county ERAF but are instead set aside in a 'Sales and Use Tax Compensation Fund' established in each county's treasury. (§ 97.68, subds. (a), (c)(1)-(6).) In the final 'flip,' any shortfall to schools caused by the reduction of funds to the county ERAF is compensated out of the state's General Fund. This so-called 'Triple

8

Flip' is slated to end once the recovery act bonds are repaid. (§§ 97.68, subd. (b)(l), 7203.1; Gov. Code, § 99006, subd. (b).)" (*City of Alhambra*, *supra*, 55 Cal.4th at pp. 715-716.)

## II.    The VLF Swap

The Supreme Court discussed the VLF Swap in *City of Alhambra* as follows:

"Also in 2004, the Legislature reduced the annual vehicle license fee (VLF) from 2 percent of a vehicle's market value to 0.65 percent of market value. (Stats. 2004, ch. 211, §§ 30-31, pp. 2332-2333; see *Guillen v. Schwarzenegger* (2007) 147 Cal.App.4th 929, 937.) Because the VLF had been a significant source of local revenue, the Legislature passed section 97.70, also known as the 'VLF Swap,' which diverted property tax revenue to fully compensate each city and county for the VLF revenue that it otherwise would have received. This diverted property tax revenue, which otherwise would have been allocated to each county's ERAF, is placed in a 'Vehicle License Fee Property Tax Compensation Fund' established in each county's treasury, and the county then distributes the fund to each city in lieu of the lost VLF revenue. (§ 97.70, subds. (a), (b).)" (*City of Alhambra*, *supra*, 55 Cal.4th at p. 716.)

## III.    The Revenue Neutral Effect of the Triple Flip and VLF Swap on the A.B. 8 Property Tax Allocation System

In *City of Alhambra*, the California Supreme Court held the diversion of ERAF revenue pursuant to the Triple Flip and VLF Swap does not trigger a reallocation of property tax revenue under the A.B. 8 property tax allocation system.

The *City of Alhambra* case involved a disputed property tax administration fee that defendant County of Los Angeles had withheld from property tax revenue the County was required by the Triple Flip and VLF Swap legislation to divert from its ERAF and transfer to 47 plaintiff Cities. It was undisputed that without the Triple Flip and VLF Swap legislation, the property tax revenue would have been deposited in the ERAF and exempted from the property tax administration fee under section 95.3, subdivision (b)(1).

9

But because the revenue was diverted to the Cities pursuant to the Triple Flip and VLF Swap, the County concluded the revenue had lost its exempt status. Before transferring the diverted revenue, the County deducted a property tax administration fee of "$4.8 million in fiscal year 2006-2007 and $5.3 million in fiscal year 2007-2008," even though its "actual annual cost . . . in administering the Triple Flip and VLF Swap with regard to all 47 cities was approximately $35,000." (55 Cal.4th at pp. 711, 717.)

In order to recover the disputed fee, the Cities petitioned for a writ of mandate against the County. In support of their petition, the Cities argued "that the ERAF exemption from the fee still applied under the 2004 [Triple Flip and VLF Swap] legislation and that Revenue and Taxation Code section 97.75, enacted as part of the 2004 legislation, prohibited County's method of calculating the property tax administration fee." (*City of Alhambra*, *supra*, 55 Cal.4th at p. 711.) In opposition, the County argued the Triple Flip and VLF Swap legislation "allowed it to impose property tax administration fees on the diverted local property taxes because they no longer funded the County ERAF, but were instead used to fund state budget gaps and thus have lost their exempt status." (*Ibid*.)

The Supreme Court granted the petition and applied the statutory exemption from the fee to the diverted ERAF revenue. In doing so, the Court refused to add the diverted ERAF revenue to the Cities' property tax allocation base, stating the "statutory provisions of the Triple Flip and VLF Swap suggest a contrary, revenue-neutral intent to maintain the status quo of A.B. 8 allocations." (*City of Alhambra*, *supra*, 55 Cal.4th at p. 723.) The court explained that "[a]lthough the Legislature did not address directly the effect of the 2004 budgetary measures on the exemption status of ERAF monies diverted by the Triple Flip and VLF Swap, it did express the intent that the diversions (or adjustments) not fundamentally alter the A.B. 8 allocation system. County's withholding of the disputed administration fee is inconsistent with this intention." (*Id.* at pp. 721-722.)

By way of further explanation, the court stated: "First, the Triple Flip and VLF Swap contain provisions ensuring that, despite the diversions, the first stage of A.B. 8 calculations (calculating the property tax revenue *bases* of cities, counties, and ERAF's)

10

remains unchanged. Sections 97.68, subdivision (e) (Triple Flip), and 97.70, subdivision (d) (VLF Swap), provide that the amounts calculated under section 96.1 shall not reflect any property tax revenue allocation required by the Triple Flip or VLF Swap 'for a preceding fiscal year.' This language makes clear that the prior fiscal year's Triple Flip and VLF Swap adjustments do not enlarge a city's or county's property tax allocation base nor reduce the ERAF's property tax allocation base for that prior fiscal year, and, therefore, have no effect on the base calculations required for the current year's A.B. 8 allocation. In essence, these subdivisions of the Triple Flip and VLF Swap preserve the status quo of the Cities', County's, and ERAF's property tax revenue bases as it existed before the 2004 budgetary measures. Thus, these entities' property tax bases continue to grow annually as they did before the 2004 budgetary measures.

"Second, the Triple Flip and VLF Swap contain provisions ensuring that annual property tax revenue growth cannot be altered by the Triple Flip or VLF Swap. Sections 97.68, subdivision (f)(3) (Triple Flip), and 97.70, subdivision (f)(3) (VLF Swap), prohibit the use of their respective statutes from altering 'the manner in which ad valorem property tax revenue growth from fiscal year to fiscal year' is 'determined or allocated in a county.'

"It is significant that subdivision (f)(3) of both the Triple Flip and VLF Swap statutes refers broadly to 'property tax revenue growth' and not the more specific term, 'tax increment,' as it is defined by section 96.1, subdivision (a)(2). Additionally, given that other provisions of the Triple Flip and VLF Swap make clear that the property tax revenue *bases* of cities, counties, and ERAF's remains unchanged by these adjustments, the presence of subdivision (f)(3) in both sections 97.68 and 97.70 appears to prohibit County from using these measures to alter *any other* growth calculation in property tax revenue. Thus, reading sections 95.3, 96.1, 97.68, subdivision (e), 97.70, subdivision (d), 97.68, subdivision (f)(3), and 97.70, subdivision (f)(3) together, we discern that the Triple Flip and VLF Swap were drafted with an intent to maintain the status quo of the A.B. 8 property tax revenue allocation system and the property tax administration fee system. 'Where reasonably possible, we avoid statutory constructions that render particular

11

provisions superfluous or unnecessary.' (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459.)" (*City of Alhambra*, *supra*, 55 Cal.4th at pp. 723-724, fns. omitted.)

The court summarized its conclusions as follows: "In sum, nothing in the legislative history concerning the property tax administration fee negates our conclusion that the Legislature enacted the Triple Flip and VLF Swap with the intent to preserve generally the status quo of the A.B. 8 allocation system. The implementing statutes of these 2004 budgetary measures suggest a revenue-neutral intent that is inconsistent with County's policy of annually withholding from Cities additional millions of dollars in property tax administration fees merely because of the adjustments required by the Triple Flip and VLF Swap. A contrary interpretation of the relevant statutes would permit the statewide multimillion-dollar annual shift of property tax revenues from the cities to the counties and would run afoul of the implementing statutes for the Triple Flip and VLF Swap which forbid interference in 'the manner in which ad valorem property tax revenue growth from fiscal year to fiscal year is determined or allocated in a county.' (§§ 97.68, subd. (f)(3); see 97.70, subd. (f)(3).) Should the Legislature disagree with our conclusion, it of course remains free to expressly authorize a different result. (See *People v. Latimer* (1993) 5 Cal.4th 1203, 1213.)" (*City of Alhambra*, *supra*, 55 Cal.4th at p. 729.)

**IV.  Because the Triple Flip and the VLF Swap Have No Effect on the A.B. 8 Property Tax Revenue Allocation System, They Have No Effect on the Passthrough Allocations, Which According to *LAUSD I*, Are Based on the Same A.B. 8 Property Tax Revenue Allocation System**

In *LAUSD I*, we looked to the A.B. 8 property tax allocation system to determine whether an ERAF's property tax revenue should be added to the property tax allocation base of the school receiving the revenue. We stated that according to subdivision (d)(5), "property tax revenue shifted to ERAF's under sections 97.2 and 97.3 is deemed property tax revenue allocated to the ERAF's. Given that, in the County's words, 'ERAFs are merely an accounting device,' we are compelled to conclude that any property tax

12

revenue deemed allocated to ERAF's under subdivision (d)(5) necessarily qualifies as property tax revenue to the school that received it." (*LAUSD I*, *supra*, 181 Cal.App.4th at p. 426.)

In light of the Supreme Court's holding in *City of Alhambra* that the Triple Flip and VLF Swap have no effect on the A.B. 8 property tax revenue allocation system, we necessarily conclude the diversion of revenue from an ERAF neither increases the recipient entity's property tax revenue base, nor decreases the donor ERAF's property tax revenue base. (*City of Alhambra*, *supra*, 55 Cal.4th at pp. 723-724.) When the *City of Alhambra* decision is applied to our holding in *LAUSD I* that "any property tax revenue deemed allocated to ERAF's under subdivision (d)(5) necessarily qualifies as property tax revenue to the school that received it," we reach the inevitable conclusion that the diversions of revenue under sections 97.68, subdivision (e) (Triple Flip), and 97.70, subdivision (d) (VLF Swap), do not alter the property tax revenue base of either the ERAF from which the funds were diverted, or the school (LAUSD) that would have received the funds in the absence of the diversion. (*LAUSD I*, *supra*, 181 Cal.App.4th at p. 426.)

We therefore conclude the property tax revenue that LAUSD received from the ERAF's should be deemed to include its share of the ERAF revenue that was diverted by the Triple Flip and VLF Swap legislation, thus avoiding either a decrease in LAUSD's passthrough payment allocation, or an increase in a city or county's passthrough payment allocation. Our revenue-neutral conclusion is consistent with Health and Safety Code section 33607.5, subdivision (a)(2)'s pronouncement that passthrough "payments made pursuant to this section to the affected taxing entities . . . shall be allocated among the affected taxing entities . . . in proportion to the percentage share of property taxes each affected taxing entity . . . receives during the fiscal year the funds are allocated, which percentage share shall be determined without regard to any amounts allocated to a city, a city and county, or a county pursuant to Sections 97.68 [the Triple Flip legislation] and 97.70 [the VLF Swap legislation] of the Revenue and Taxation Code, and without regard to any allocation reductions to a city, a city and county, a county, a special district, or a

13

redevelopment agency pursuant to Sections 97.71, 97.72, and 97.73 of the Revenue and Taxation Code and Section 33681.12."

Our revenue-neutral conclusion is also consistent with section 97.68, which prohibits the County from implementing the Triple Flip and VLF Swap in a manner that interferes with the existing determination or allocation of ad valorem property tax revenue growth from fiscal year to fiscal year. (§§ 97.68, subd. (f)(3), 97.70, subd. (f)(3); *City of Alhambra*, *supra*, 55 Cal.4th at p. 729.)

## DISPOSITION

The judgment and orders implementing the judgment are reversed and the matter is remanded for further proceedings consistent with the views set forth in this opinion. Plaintiff and appellant LAUSD is entitled to recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**

SUZUKAWA, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

14